**In re STARDUST INN, INC., Jointly administered with E & G Restaurant, Debtors.**

**STARDUST INN, INC. and E & G Restaurant/Lounge, Inc., Plaintiffs,**

v.

**Rajnikant A. DOSHI, Defendant.**

**Bankruptcy Nos. 82–02849G, 82–03583G. Adv. No. 83–0396G.**

United States Bankruptcy Court, E.D. Pennsylvania.

March 9, 1987.

Nelson J. Sacks, Media, Pa., for the debtors/plaintiffs, Stardust Inn, Inc. and E & G Restaurant/Lounge, Inc.

George M. Bobrin, The Jefferson Law Center, Philadelphia, Pa., for defendant, Rajnikant A. Doshi.

## OPINION

BRUCE I. FOX, Bankruptcy Judge:

This is an action for breach of contract brought by two bankruptcy debtors, Stardust Inn, Inc. and E & G Restaurant Lounge, Inc., against Rajnikant A. Doshi. Although the case is a related proceeding, at trial the parties consented to the entry of a final judgment by the bankruptcy court. *See* 28 U.S.C. § 157(c)(2). For the reasons set forth below, judgment will be entered in favor of the debtors in the amount of $15,000.00.[1]

### I.

Before discussing either the facts or the merits, I must address a jurisdictional issue. The debtors filed their voluntary chapter 11 bankruptcy petitions on June 18, 1982 and July 30, 1982 respectively.[2] This adversary proceeding was commenced by the debtors on February 10, 1983. After considerable activity in their bankruptcy cases, including the approval of a disclosure statement and the scheduling of a confirmation hearing, the debtors requested that their bankruptcy cases be dismissed pursuant to 11 U.S.C. § 1112(b). After notice and hearing, this court entered an order on March 31, 1985, granting the debtors leave to dismiss their petitions and in July 1985, these cases were closed. *See* 11 U.S.C. § 350.

---

1. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rule 7052.

2. The debtors' bankruptcy cases were ordered jointly administered on March 31, 1983.

Although the underlying bankruptcy cases were dismissed, this adversary proceeding went to trial, neither plaintiffs nor defendant noting to the court the fact of the bankruptcy dismissal. After trial and post-trial filings, this court discovered, *sua sponte*, that plaintiffs had no pending bankruptcy cases and requested memoranda from the parties addressing my power to decide this proceeding. The defendant declined to file any memorandum and the plaintiffs submitted one of extreme brevity without case citation.[3]

■ As a general rule, the dismissal of a bankruptcy case should result in the dismissal of all remaining adversary proceedings. *In re Pocklington*, 21 B.R. 199, 202 (Bankr.S.D.Cal.1982); *accord, In re Rush*, 49 B.R. 158 (Bankr.N.D.Ala.1985). This is particularly true of adversary proceedings which are "related" to the bankruptcy case, 28 U.S.C. § 157(c)(1), for the related proceedings can only be heard by a bankruptcy court because of their nexus to the debtor's bankruptcy case. *See generally Pacor v. Higgins*, 743 F.2d 984 (3d Cir. 1984).

The question then is whether dismissal of a bankruptcy case must always result in the dismissal of pending related adversary proceedings. If not, one must identify the relevant factors in determining whether dismissal is warranted.

■ The few courts which have considered the issue have concluded that dismissal of the bankruptcy case does not mandate dismissal of all pending adversary proceedings. *See, e.g., In re Pocklington; In re Lake Tahoe Land Co.*, 12 B.R. 479 (Bankr.D.Nev.1981).[4] Even *In re Rush*, which contains dictum to the contrary, holds only that a bankruptcy court should not undertake to enforce a settlement agreement, never approved by the bankruptcy court itself, after the bankruptcy case and adversary proceedings are voluntarily dismissed.[5] Where dismissal would cause prejudice to one of the parties, the bankruptcy court has the power to retain jurisdiction. *In re Pocklington*.

This power to retain jurisdiction over adversary proceedings may be analogized[6] to a federal court's retention of jurisdiction over state pendent or ancillary claims subsequent to the dismissal of the federal claim giving rise to subject matter jurisdiction.[7] Even though the federal claims may have been dismissed prior to trial, the district court is not required to dismiss the state law claims, *see Nationwide Mutual Fire Insurance Co. v. T & D Cottage Auto Parts and Service, Inc.*, 705 F.2d 685 (3d Cir.1983); *Rogin v. Bensalem Township*, 616 F.2d 680 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981), although dismissal of such claims is the norm. *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386 (3d Cir. 1973). *See generally Financial Bankshares Inc. v. Metzger*, 680 F.2d 768 (D.C. Cir.1982). Rather, the district court has the power to retain jurisdiction and decide the state law claim if such retention is an

---

3. Plaintiffs' suggestion that there is federal jurisdiction under 28 U.S.C. § 1332 seems undercut by the lack of diversity of citizenship at the time of filing the complaint. (*See* plaintiffs' complaint ¶¶ 3–5).

4. Obviously, the Bankruptcy Code itself contemplates that the bankruptcy court will have the jurisdiction to consider certain matters even after the case is closed (e.g., the section 524 injunction granted upon discharge). *See In re Funket*, 27 B.R. 640 (Bankr.M.D.Pa.1982); H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 445 (1977).

5. The holding in *Rush* is similar to the conclusion reached in *Bryan v. Smith*, 174 F.2d 212, 215 (7th Cir.1949) ("There can be no ancillary proceeding to enforce an interlocutory order made in a suit that has been dismissed....").

6. This analogy is not exact for the district courts have the discretion to decline to hear pendent state law claims in general, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), while bankruptcy courts do not possess such broad discretion over related proceedings. *See* 28 U.S.C. § 1334(b), (c).

7. A clear explanation of pendent and ancillary jurisdiction and their differences is provided in *Ambromovage v. United Mine Workers of America*, 726 F.2d 972 (3d Cir.1984); *accord, Federman v. Empire Fire and Marine Insurance Co.*, 597 F.2d 798 (2d Cir.1979).

appropriate exercise of discretion. In determining whether to hear the pendent or ancillary claim, courts have identified various factors such as judicial economy, fairness and convenience to the parties and the degree of difficulty of the state law issues involved. *See, e.g., United States v. Zima,* 766 F.2d 1153 (7th Cir.1985); *Financial General Bankshares, Inc. v. Metzger; Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474 (3d Cir.1979). Judicial economy looks to preserve energies already invested by the parties and the court in the proceedings; fairness to the litigants considers whether the parties would be prejudiced by dismissal (such as, for example, if the state statute of limitations has run). *L.A. Draper & Son v. Wheelabrator-Frye, Inc.,* 735 F.2d 414 (11th Cir.1984).

■■■ I believe these same factors are relevant in my determination of the jurisdictional issue *sub judice,* and that my discretion would be better exercised by retaining jurisdiction and deciding this adversary proceeding on its merits. First, the matter has already been fully tried with all parties simply awaiting the decision of this court. This is significant since dismissal of the action would require that the matter be refiled and relitigated in state court. Second, this matter involves no difficult or unsettled issues of state law. Third, the fact that both parties consented to my entering a final, binding decision (rather than a recommendation) leads me to believe that they were interested in bringing this matter to a close after more than three years.[8] While I recognize that were I to dismiss this matter, plaintiffs could probably refile in state court because the statute of limitations has not yet run, *see* 42 Pa.C.S.A. § 5526(2) (five year limitation period), this is outweighed by the factors mentioned above, particularly the fact that this case has been fully tried. *See generally Lentino v. Fringe Employee Plans, Inc.* Moreover, I have no reason to believe that the parties were aware of the jurisdictional significance of the dismissal of the underlying bankruptcy case and were attempting to have this court retain jurisdiction by their silence.

This is not to say that this court would have retained jurisdiction had it known in July 1985 that there was a pending adversary proceeding. Generally, when the debtor dismisses his bankruptcy case, all pending adversary proceedings brought by the debtor should be dismissed as well. However, here I conclude that significant events have occurred since the bankruptcy dismissal warranting retention of the adversary proceeding. I therefore proceed to a discussion of the underlying merits.

## II.

The debtors, prior to their bankruptcy filings, were the owners of a restaurant, bar and motel located in Chester, Pa. On September 26, 1982, the debtors entered into a written agreement granting defendant Doshi (hereinafter "the buyer") an exclusive option to purchase a bar, restaurant, a motel and related personalty. The option agreement provided that the purchase price would be $200,000.00 to be paid as follows:

```
$ 10,000.00  on September 26, 1982
   5,000.00  on October 4, 1982
  25,000.00  on November 1, 1982
 100,000.00  on November 15, 1982
             (through the assumption of the
             existing mortgage on the real
             property)
```

At the time of the execution of the option agreement, the buyer paid the debtors $10,000.00. The option agreement also provided, *inter alia* that:

(a) the option had to be exercised no later than 5 P.M. on October 4, 1982 by the exercise of a formal agreement of sale;

(b) if the option were not exercised, the option would expire and the $10,000.00 paid

---

**8.** Even if I had the power under state law, 42 Pa.C.S.A. § 5103, to transfer the proceeding to state court, *see Weaver v. Marine Bank,* 683 F.2d 744 (3d Cir.1982), (as opposed to recommending to district court to transfer the case), I think it would be wasteful to have the parties await the call of the state court trial list and retry this matter.

by the buyer on September 26, 1982 would be retained by the debtors; and

(c) if the option agreement were exercised, the $10,000.00 paid by the buyer would be credited toward the $200,000.00 purchase price.

Notwithstanding the expiration of October 4, 1982 deadline for exercise of the option, the buyer exercised the option by entering into a written agreement of sale with the debtors dated October 21, 1982. Upon the execution of the agreement of sale, the buyer paid the debtors another $5,000.00. The October 21, 1982 agreement of sale:

(a) acknowledged that the buyer had exercised his exclusive option to purchase;

(b) provided for the sale of the bar, restaurant, motel and related personalty referred to in the September 26, 1982 option agreement and specifically provided for the sale of the debtors' liquor license to the buyer;

(c) acknowledged receipt of $15,000.00 from the buyer;

(d) provided for payments by the buyer of $25,000.00 on November 1, 1982, $60,-000.00 at settlement and for assumption of the existing mortgage on the property (not to exceed $100,000.00) at the time of settlement;

(e) provided that the agreement was contingent upon approval of the buyer by the holder of the existing mortgage, approval of the sale by the bankruptcy court and approval of the transfer of the liquor license by the Pennsylvania Liquor Control Board (hereinafter "the LCB") and that in the event any of the foregoing approvals were not obtained, the agreement would be null and void and all deposit monies would be returned to the buyer;

(f) provided for settlement on or before November 18, 1982, but also that in the event the LCB had not approved the transfer of the liquor license by that date, settlement would be held within one week after receipt by the buyer of such approval.

The buyer did not make the $25,000.00 payment due, under the agreement, on November 1, 1982. Some time shortly before November 12, 1982, the buyer's attorney informed the debtors' attorney by telephone that the buyer would not be able to go to settlement to complete the purchase. This conversation was confirmed by letter dated November 12, 1982. In a subsequent letter to the debtors' counsel, dated November 22, 1982, the buyer's attorney explained that the buyer did not complete the deal because he did not receive money he was expecting from friends or relatives and that he could not afford to borrow the necessary funds. In addition, the buyer's attorney also advised the LCB, by letter dated November 8, 1982, that the buyer was withdrawing his previously filed request for approval of the transfer of the liquor license.

On February 3, 1983, the debtors entered into an agreement of sale with William R. McGonigal and Barbara L. McGonigal for the sale of the same property, including the liquor license, which was the subject of the October 21, 1982 agreement of sale. The February 3, 1983 agreement also provided for the conveyance, by Township Holding Corp., to the McGonigals of a parking lot adjacent to the motel. The agreed purchase price was $170,000.00. The agreement contained a standard mortgage contingency clause in favor of the McGonigals. On June 13, 1983, the debtors and the McGonigals went to settlement and completed the sale of the subject property for a sale price of $170,000.00. The sale was approved by this court.

### III.

The debtors have brought this action on the theory that the buyer committed an anticipatory breach of the October 21, 1982, agreement of sale. The parties agree that, if the debtors prevail, damages should be assessed at $15,000.00.[9]

9. This figure was determined as follows: the sale price in the October 21, 1982 agreement ($200,000.00) minus the sale price in the February 3, 1982 agreement ($170,000.00) minus the

In *In re Silberman,* 30 B.R. 219, 226–27 (Bankr.E.D.Pa.1983), Chief Judge Goldhaber set forth the test for determining whether an anticipatory breach of contract has occurred:

> Under Pennsylvania law, in order for the renunciation of a contract to rise to the level of an anticipatory breach, "there must be an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *McClelland v. New Amsterdam Casualty Co.,* 322 Pa. 429, 433, 185 A. 198, 200 (1936), quoted in *McCloskey & Co. v. Minweld Steel Co.,* 220 F.2d 101, 104 (3d Cir.1955).

*Accord, Restatement (Second) of Contracts* § 250 (1979) (hereinafter "Restatement").

■ In this case, I find that the buyer's oral notification to the debtors shortly before November 12, 1982, of his intent not to perform his obligations under the agreement of sale, which was promptly confirmed in writing, constituted an absolute and unequivocal refusal to perform his obligations. It rose to the level of an anticipatory breach of contract, entitling the debtors to damages.[10] *See* Restatement § 253(1).

The buyer seeks to avoid the consequences of his breach asserting that he is entitled to judgment because the debtors did not establish at trial that they would have been able to comply with the terms of the agreement of sale. Specifically, the buyer argues that the debtors did not prove that (a) they had obtained the existing mortgagee's approval for the assumption of the mortgage by the buyer; (b) they had applied in time for the bankruptcy court's approval of the sale; and (c) the transfer of the liquor license would have been received prior to November 18, 1981. *See* Defendant's Proposed Conclusions of Law ¶ 1.

Although the buyer has cited no authority, there is support for the proposition that a party who anticipatorily breaches a contract is not liable for damages if it appears, notwithstanding the breach, that there would have been a total failure by the other party to perform its return promise. *E.g.,* Restatement § 254; 4 *Corbin on Contracts* § 978 (1951) (hereinafter "Corbin"). As Corbin states:

> [I]f the buyer of land repudiates the contract and refuses to pay, it is unnecessary for the vendor to make a tender of a conveyance before bringing suit;[11] but he cannot win his suit if it appears that he himself could not or would not have substantially performed on this own part.

4 Corbin § 978, at 925 (footnotes omitted).

In the case at bar, the debtors established that they could have performed their

---

deposit paid by the buyer ($15,000.00). *Accord, Harris v. Dawson,* 479 Pa. 463, 388 A.2d 748 (1978); Comment, *The Uniform Land Transactions Act: Pennsylvania Property Law and Sellers' Remedies for Breach of Contract for Sale of Real Estate,* 55 Temple L.Q. 577, 591 & authorities cited therein (1982); 32 Pennsylvania Law Encyclopedia, *Sales of Real Property* § 171 (1960).

**10.** In his testimony at trial, the buyer made some effort to suggest that he did not want to go forward with the transaction because he learned that an alleged representation made by the debtors' agent during their negotiations (*i.e.,* that an exit ramp from a nearby interstate highway was going to be built) was not true. Nothing in the agreement of sale or the buyer's answer to the complaint made any reference to the alleged representation or the buyer's reliance thereon. The debtors' motion to strike this testimony was not opposed. (N.T. 51–52). The buyer also suggested that his decision was based on the debtors' failure to provide him with certain financial information relating to the motel, bar and restaurant that debtors' allegedly failed to supply him as agreed. I resolve any conflict in the evidence in favor of the debtors and find that the reason the buyer declined to proceed with the sale was, as his attorney advised the debtors, because his expected financing did not materialize. This was not a contingency allowed for under the agreement of sale.

**11.** In Pennsylvania, the rule is that a party is discharged from actual performance of his contractual promises after anticipatory breach by the other party. *See City of Farrell v. H. Platt Co.,* 142 Pa.Super. 242, 15 A.2d 718 (1940); Restatement § 253(2), *cited with approval in Jonnet Development Corp. v. Dietrich Industries,* 316 Pa.Super. 533, 542, 463 A.2d 1026, 1031 (1983). *See also In re Silberman,* 30 B.R. at 227 n. 25.

obligations under the agreement of sale absent the buyer's breach. Therefore, the buyer's argument fails.

In analyzing the buyer's argument, it is helpful to first distinguish among the third party approvals upon which the agreement of sale was conditioned. With respect to the LCB's approval of the transfer of the liquor license, the buyer errs in suggesting that failure to obtain the approval by November 18, 1982 would have terminated the agreement of sale and entitled the buyer to the return of his deposit monies. Paragraph 15 of the agreement provided only that if approval of the transfer of the liquor license were not obtained by November 18, 1982, setlement would take place within one week after receipt of the buyer's receipt of the approval. Moreover, it was the buyer's own action in withdrawing the LCB application which rendered it impossible for the parties to complete performance. The buyer cannot claim that his failure to perform was excused on the ground that approval of the liquor license would not have been timely obtained where it was his own conduct which caused the failure. *See Jonnet Development Corp. v. Dietrich Industries,* 316 Pa.Super. at 542–46, 463 A.2d at 1031–33; *Nationwide Resources Corp. v. Massabni,* 134 Ariz. 557, 658 P.2d 210 (Ariz. App.1982); Restatement § 255. In short, the possibility that the liquor license transfer approval would not have been obtained by November 18, 1982, does not defeat the debtors' claim.

With respect to the mortgagee and bankruptcy court approvals, I conclude that the debtors produced sufficient evidence to establish that they could have obtained those approvals in a timely fashion. At the time of the buyer's breach, there was still adequate time before settlement for the approvals to be obtained. There was also evidence to show that the mortgagee's approval of the buyer's assumption of the mortgage was forthcoming. (*See* Exhibit P–10). The consummation of the sale to the McGonigals several months later, on somewhat less favorable terms, also suggests that bankruptcy court approval of the sale was likely.

In addition, I note that the agreement of sale does not contain a clause providing that "time is of the essence." In the absence of such a clause, the failure to obtain a mortgage committment by the contractual deadline will not terminate an agreement of sale. *E.g., In re Flannery,* 11 B.R. 974 (Bankr.E.D.Pa.1981) (agreement of sale not terminated where buyer obtained financing committment seven days late). The same principle should apply to contingency clauses based on mortgagee approval of the assumption of the existing mortgage by the buyer and bankruptcy court approval. The fact that time was not of the essence in this agreement and that the approvals could have been obtained within a reasonable period after November 18, 1982 bolsters my finding that the debtors could have performed their obligations had the buyer not repudiated the contract.

### IV.

For the reasons set forth above, I find that the buyer committed an anticipatory breach of contract and that the debtors are entitled to recover damages in the amount of $15,000.00. An appropriate order will be entered.