**In re ALMARC CORPORATION d/b/a Parkway Clinical Laboratories, Debtor.**

**UNIFIED DATA SYSTEMS, INC., Plaintiff,**

v.

**ALMARC CORP., T/A Parkway Clinical Laboratories, Defendant.**

**Bankruptcy No. 82–02403F.**
**Adv. No. 88–2011F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 14, 1988.

---

Jeffrey L. Abrams, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for plaintiff, Unified Data Systems, Inc.

Jay G. Ochroch, Horace A. Stern, Patricia Carroll, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for debtor/defendant, Almarc Corp.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

An adversary proceeding initiated by Unified Data Systems, Inc. (UDS) has triggered a motion to dismiss from the debtor-defendant. In its complaint, UDS alleges that Almarc Corp. (Almarc) has breached a post-petition contract, thereby entitling UDS to a judgment in excess of $30,000.00. Almarc contends that this complaint should be dismissed for lack of subject matter jurisdiction.

### I.

On May 28, 1982, Almarc filed a voluntary petition in bankruptcy under chapter 11. UDS had no prepetition relationship with Almarc. On August 11, 1982, though, the parties entered into a "service agreement" by which UDS agreed to provide monthly computer services to the debtor, and the debtor agreed to pay for such services within thirty days of invoicing. (Complaint, Exhibit B.) The parties agree that in September, 1982, this court ap-

proved of this contractual arrangement pursuant to an application filed by Almarc.[1]

The parties also agree that on September 10, 1986 this court entered an order confirming Almarc's chapter 11 plan of reorganization. (The plan itself has been attached to the complaint as Exhibit A.) Article XIII of the plan called for the retention of jurisdiction by this court. In relevant part, it stated that:

The court shall retain jurisdiction of this case until the Plan has been fully consummated, including, but not limited to, the following matters:

. . . .

B. To adjudicate all controversies concerning the classification or allowance of any claim;

. . . .

F. To adjudicate all claims or controversies arising out of any purchases, sales or contracts made or undertaken by the debtor during the pendency of these proceedings....

The Service Agreement itself contained the following provisions:

15. *Exclusive Jurisdiction*

Client [the debtor] consents to the jurisdiction of the Courts of Common Pleas of Philadelphia, Pennsylvania and/or the United States District Court for the Eastern District of Pennsylvania in any action or proceeding pursuant hereto....

18. *Complete Agreement*

This agreement sets forth the entire understanding of the parties. It shall not be changed or terminated orally....

UDS alleges, and for the purposes of resolving this motion I accept as true, *see Satz v. ITT Financial Corp.*, 619 F.2d 738 (8th Cir.1980); *Wood v. Santa Barbara*

1. I have accepted the parties express agreement that this application was approved, although the docket entries reflect no disposition of the application.

2. The fact that the debtor is a party to the proceeding does not, *per se,* confer subject mat-

*Chamber of Commerce, Inc.*, 507 F.Supp. 1128 (D.Nev.1980), that Almarc has failed to pay for computer services billed in October 1987 through February 1988. The parties acknowledge that no final decree has been entered pursuant to Bankr.Rule 3022.

## II.

UDS contends that the retention of jurisdiction provision found in the confirmed plan provides subject matter jurisdiction for this court to resolve this proceeding. Almarc counters that the plan, by its terms, does not confer jurisdiction over this dispute; moreover, even if it so attempted, Almarc argues that such a provision is improper. Neither party has addressed the jurisdictional provision found in the contract itself.

## A.

Almarc correctly notes that a federal court, in deciding a motion to dismiss for lack of subject matter jurisdiction, presumptively lacks jurisdiction over a proceeding unless the plaintiff affirmatively demonstrates that jurisdiction exists. *Commodity Futures Trading Comm'n v. Nahas*, 738 F.2d 487 (D.C.Cir.1984). *Accord, e.g., Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805 (3d Cir.1981). This proposition is no less true for bankruptcy courts which, despite their expanded jurisdictional grant now found in 28 U.S.C. § 1334, remain courts of limited jurisdiction.[2] *See Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984); *In re Chargit, Inc.*, 81 B.R. 243, 247 (Bankr.S.D.N.Y.1987). "The burden of establishing the requisite jurisdictional facts rests on the plaintiff as the party alleging their existence." *Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d at 805. *See also Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir.1986); *Dadzie on Behalf of Int'l*

ter jurisdiction. *See In re M. Paolella & Sons, Inc.*, 85 B.R. 965, 970 (Bankr.E.D.Pa.1988); *In re Malone*, 74 B.R. 315 (Bankr.E.D.Pa.1987), *recommendation approved*, C.A. # 86–361 (E.D.Pa. September 30, 1987).

*Kal–Sahara Corp. v. Leslie,* 550 F.Supp. 77 (E.D.Pa.1982).

In presenting those facts necessary to establish jurisdiction, plaintiff is free to go outside the pleadings, *see, e.g., Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.,* 568 F.2d 1074 (5th Cir.1978), *cert. denied,* 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978), by utilizing discovery tools, and by submitting affidavits. *See Satz v. ITT Financial Corp.; Midwest Elevator Systems, Inc. v. St. Paul Fire and Marine Ins. Co.,* 508 F.Supp. 578 (D.Kan. 1981). Here, the plaintiff appears to be relying solely upon the pleadings and their documentary attachments.

### B.

Just recently, in *In re Cinderella Clothing Industries, Inc.,* 93 B.R. 373 (Bankr.E. D.Pa.1988) I had occasion to address the jurisdiction of bankruptcy courts post-confirmation until entry of the final decree, which occurs after the estate has been fully administered and which closes the case. *See* Bankr.Rule 3022. Bankruptcy courts retain jurisdiction over a chapter 11 case, after confirmation,

> to protect its [confirmation] decree, to prevent interference with the execution of the plan, and to aid otherwise in its operation.

*In re Dilbert's Quality Supermarkets, Inc.,* 368 F.2d 922, 924 (2d Cir.1966). *Accord, e.g., In re Pittsburgh Terminal Coal Corp.,* 183 F.2d 520 (3d Cir.1950), *cert. denied,* 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950); *In re New York, N.H. & H.R. Co.,* 169 F.2d 337 (2d Cir.1948), *cert. denied,* 335 U.S. 867, 69 S.Ct. 138, 93 L.Ed. 412 (1948); *In re Lombard–Wall, Inc.,* 44 B.R. 928, 935 (Bankr.S.D.N.Y.1984), *aff'd in relevant part,* 48 B.R. 986 (S.D.N.Y. 1985).

Whether such jurisdiction would exist absent a provision in the confirmed plan or order of confirmation—that is, whether the failure of the plan proponent or the court to expressly note such retention of power would constitute a waiver of jurisdiction— is an issue not before me, as the instant confirmed plan expressly provided such jurisdiction.[3] *See generally,* 5 *Collier on Bankruptcy* ¶ 1142.01[1] (15th ed. 1988). The converse, though, is raised by the defendant. Can a confirmed plan or confirmation order confer subject matter jurisdiction beyond that provided by federal statute?

At least one court has held that a retention of jurisdiction clause found in a confirmed plan would justify bankruptcy court resolution of an adversary proceeding, pending at the time of confirmation, even though the outcome of the proceeding would have no effect upon the plan. *Matter of Hudson Feather & Down Products, Inc.,* 36 B.R. 466 (E.D.N.Y.1984). Respectfully, I disagree with this holding.[4]

---

3. Almarc argues that, with punctuation changes, Article XIII subsection F may be read so as to exclude post-petition contracts from the retention of jurisdiction section. As UDS notes, though, this plan provision was drafted by Almarc and should be interpreted as written. The instant agreement falls within the express language of this retention provision.

4. I am mindful that in *In re Stardust Inn, Inc.,* 70 B.R. 888 (Bankr.E.D.Pa.1987), I concluded that, in very narrow circumstances, bankruptcy courts have the discretion to retain jurisdiction over adversary proceedings, even though the bankruptcy case itself has been closed, by analogy to district court "retention of jurisdiction over state pendent or ancillary claims subsequent to the dismissal of the federal claim giving rise to subject matter jurisdiction." 70 B.R. at 890. The discretion to retain jurisdiction is predicated upon the court initially having jurisdiction over the proceeding, with the issue being whether subsequent events should divest the court of that jurisdiction. In *Stardust Inn,* I further concluded that "[i]n determining whether to hear the pendent or ancillary claim, courts have identified various factors such as judicial economy, fairness and convenience to the parties and the degree of difficulty of the state law issues involved." 70 B.R. at 891.

In the instant matter, for reasons noted below, this court never had jurisdiction over this proceeding; moreover, in light of the contractual forum selection clause also discussed below, it would be an inappropriate exercise of discretion to retain jurisdiction over this claim. In contrast, my disagreement with the court in *Hudson Feather* is not in its retention of jurisdiction—since the proceeding was pending prior to confirmation—but in its suggestion that the terms of the plan operate as a source of jurisdictional authority. I do agree, though, that the terms of the plan are relevant in deciding

Bankruptcy courts, like other federal courts, possess limited jurisdiction, the outermost boundary of which is found in their ability to adjudicate non-core proceedings. That boundary has been defined:

> [as] whether the outcome of that proceeding would have any effect on the estate being administered.... An action is related to bankruptcy, if the outcome would alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Pacor, Inc. v. Higgins,* 743 F.2d at 994 (citations omitted). *Accord In re Monroe Well Service, Inc.,* 67 B.R. 746, 753–54 (Bankr.E.D.Pa.1986). To the extent the outcome of a dispute, be it an adversary proceeding or contested matter, would have no conceivable effect upon the administration of the bankruptcy case, then a bankruptcy court possesses no jurisdiction to hear it, whatever the language of a confirmed plan. *Accord In re Tri–L Corp.,* 65 B.R. 774, 778 (Bankr.D.Utah 1986):

> A reservation of jurisdiction beyond what is necessary to effectuate the plan of reorganization is beyond the power of the bankruptcy court.... The bankruptcy court cannot obtain that power merely by inserting a provision in the plan or order of confirmation reserving jurisdiction.

*See also In re J.T. Gerken Trucking, Inc.,* 10 B.R. 203 (Bankr.N.D.Ohio 1981).

This conclusion flows from the established principle that parties cannot confer subject matter jurisdiction by agreement. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *In re Dr. C. Huff Co.,* 44 B.R. 129, 134 (Bankr.W.D.Ky.1984). Thus, even though the terms of a confirmed plan may be binding upon the debtor and its creditors, 11 U.S.C. § 1141; *see, e.g., In re*

whether to exercise court discretion to retain jurisdiction over a related adversary proceeding

*Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988), that alone is insufficient to provide a jurisdictional source.

A leading commentator suggests that "so long as a chapter 11 case is 'open', there does not appear to be any limit on the court's jurisdiction under 28 U.S.C. § 1334(b) ..." 5 *Collier on Bankruptcy,* ¶ 1142.01, at 1142–3 (15th ed. 1988). Section 1334(b), though, always requires that the outcome of the dispute conceivably effect the administration of the bankruptcy case. The effect that a proceeding may have upon the administration of an estate may be dependent upon factors such as the bankruptcy chapter under which the case has been filed, the size of the estate, the nature of the claims against the estate and whether confirmation has occurred. *See In re Joliet–Will County Community Action Agency,* 847 F.2d 430, 431 (7th Cir.1988); *In re M. Paolella & Sons, Inc.; In re Malone.*

### III.

In the proceeding *sub judice,* the record does not disclose any effect this dispute may have upon the debtor's ability to consummate its confirmed plan. The debtor, through its counsel, argues that virtually all plan distributions save those to the Internal Revenue Service have been made, and that the outcome of this proceeding will have no impact upon the plan. Plaintiff does not dispute this factual assertion of counsel. (Plaintiff's memorandum of law at 3.) *Cf. Autera v. Robinson,* 419 F.2d 1197, 1202 (D.C.Cir.1969) (uncontroverted statements of counsel may serve as basis for resolving a motion). Plaintiff, due perhaps to its mistaken belief that the confirmed plan itself is sufficient authority for this court to act, does not offer any evidence disclosing how the debtor's plan would be affected by the outcome of this proceeding. Certainly, I have the discretion to allow UDS the opportunity to under-

commenced preconfirmation.

take discovery which might produce evidence sufficient to support its jurisdictional position. *See Majd–Pour v. Georgiana Community Hospital, Inc.*, 724 F.2d 901 (11th Cir.1984). In light of UDS's failure to make such a request, though, *id.* at 903, coupled with the contractual language which UDS drafted, I shall rule on Almarc's motion as the record now stands.

■ The service agreement itself, upon which UDS bring suit, and which was prepared by UDS, contains a forum selection clause which refers only to the district court and state court. There is no mention of bankruptcy court as a potential forum for dispute resolution. The Third Circuit Court of Appeals has instructed that forum selection claims are generally binding upon bankruptcy courts, just as they are binding upon other federal courts. *In re Diaz Contracting, Inc.*, 817 F.2d 1047 (3d Cir. 1987); *Coastal Steel v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir.1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). *See also The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Sterling Forest Associates, Ltd. v. Barnett–Range Corp.*, 840 F.2d 249 (4th Cir.1988). Such a contractual provision will not be enforced only where it was procured by fraud or overreaching, where enforcement would violate a strong public policy of the forum, or where enforcement would so seriously inconvenience a party as to be unreasonable. *Coastal Steel*, 709 F.2d at 202.

■ There has been no suggestion of fraud or overreaching in connection with the jurisdictional provision of the service agreement; nor does UDS suggest that suit in a non-bankruptcy forum meets the very high standard of inconvenience mandated by *Bremen*. *See In re Diaz Contracting, Inc.* Moreover, not only is there

no *per se* strong public policy emanating from the Bankruptcy Code which would overrule a forum selection provision, but any bankruptcy concern must be lessened by the event of confirmation—an event which greatly lessens the "tutelage" status of the debtor. *See North American Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir. 1944). In short, forum selection clauses have even more force after confirmation, when bankruptcy court oversight is lessened, than prior to confirmation.[5]

## IV.

UDS asks that this court assume jurisdiction over a dispute in which it has failed to show that the proceeding has any connection to the post-confirmation administration of this case, and which is based upon an agreement that expressly refers any dispute to other forums. While it is true that this court approved the agreement, that alone would not confer jurisdiction to resolve all subsequent disputes regardless of their connection to the bankruptcy case. *In re J.T. Gerken Trucking, Inc.* (post-confirmation dispute over court approved collective bargaining agreement would not be heard in bankruptcy court). *See also In re Paradise Valley Country Club*, 26 B.R. 990 (Bankr.D.Colo.1983), *aff'd*, 31 B.R. 613 (D.Colo.1983) (dispute involving lease which was part of confirmed plan may be resolved in state court). Moreover, the agreement which was approved by this court stated that all disputes would be resolved elsewhere.

For all of these reasons, Almarc's motion to dismiss shall be granted. *See In re Chargit, Inc.; Matter of Pan American School of Travel, Inc.*, 47 B.R. 242 (Bankr. S.D.N.Y.1985).

■ An appropriate order shall be en-

5. I need not resolve the interesting question of whether the confirmation of a plan containing retention of jurisdiction terms such as those provided in the instant matter may override a contrary contractual forum selection provision. Confirmation could only have such an effect if the non-debtor party to the contract had the ability to participate in the confirmation process. Here, UDS was not a creditor of the estate; it had no prepetition claim, it filed no proof of claim, it did not vote upon the plan. In

tered.[6]

such circumstances, the forum selection clause remains unimpaired by the confirmed plan.

6. There are three types of adversary proceedings: core; non-core but related to the bankruptcy case; and non-core unrelated proceedings over which the bankruptcy court lacks jurisdiction. *See In re M. Paolella & Sons, Inc.,* 85 B.R. at 969. *See also* 1 *Collier on Bankruptcy* ¶ 3.01[1][c][vi] (15th ed. 1988). As this proceeding is not related to the debtor's bankruptcy case as defined by *Pacor, Inc. v. Higgins,* it falls within the third category of proceedings stated above. As such, it is not a civil proceeding arising under, arising in or related to a case under Title 11, 28 U.S.C. § 1334(b), and thus falls outside bankruptcy jurisdiction. 28 U.S.C. § 157(c)(1) requires that final orders in non-core, related proceedings be entered by the district court. *See* Bankr.R. 9033. Clearly, an order dismissing an adversary proceeding is a

final order. *E.g., Halet v. Wend Investment Co.,* 672 F.2d 1305 (9th Cir.1982). However, as this proceeding is not related, the directive of § 157(c)(1) does not literally apply.

Moreover, the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) was concerned with the congressional attempt to grant to an Article I court greater jurisdiction than constitutionally permitted. That concern was then addressed by 28 U.S.C. § 157. A conclusion that bankruptcy court does not possess subject matter jurisdiction over a proceeding does not implicate the constitutional issues addressed either by *Marathon* or by section 157. Therefore, there is no bar to this court entering, as opposed to recommending, a final order dismissing this proceeding for lack of subject matter jurisdiction. *See In re Chargit; Matter of Pan American School of Travel, Inc.*