**In re JOHN G. BERG ASSOCIATES, INC., Debtor.**

**JOHN G. BERG ASSOCIATES, INC., Plaintiff,**

**v.**

**TOWNSHIP OF PENNSAUKEN, Defendant.**

**Bankruptcy No. 89–12337S.**
**Adv. No. 91–1036S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

March 30, 1992.

Christopher G. Kuhn, Silberman, Markovitz & Raslavich, Philadelphia, Pa., Gen. Counsel, Bernard E. Fulghum, Jr., Elkins Park, Pa., for debtor.

George R. Piperno, Haddonfield, N.J., for defendant.

Frederic Baker, Philadelphia, Pa., Asst. U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

In the past several months, this court became aware that several post-confirmation adversary proceedings were filed on behalf of the respective Chapter 11 Debtor–Plaintiffs in the above-captioned main bankruptcy case of JOHN G. BERG ASSOCIATES, INC. ("Associates") and in the case of MAUREEN R. BERG, Bankr. No. 89–13718S ("Maureen") (these cases are referred to as "*Associates*" and "*Maureen*," respectively), by one Bernard E. Fulghum, Jr., Esquire ("Fulghum"). The link between the Associates and Maureen is John G. Berg ("Berg"), a former attorney and convicted felon who is well-known as a shrewd businessman and who is both the principal of Associates and the husband of Maureen.

General counsel for the Debtor in *Associates*, in which the Debtor's Second Amended Plan of Reorganization ("the *Associates* Plan") was confirmed on November 16, 1990, is listed as Michael S. Silberman, Esquire, of the firm of Silberman, Markovitz, & Raslavich ("SM & R"). However, most of the appearances in court in this case were made by Christopher G. Kuhn, Esquire ("Kuhn"), who is associated with SM & R, and who is listed as general counsel in *Maureen*, in which the Second Amended Plan of Reorganization was confirmed on June 7, 1991. Fulghum was not appointed as general or special counsel in either *Associates* or *Maureen*, and he made no appearances in either case prior to confirmation. His presence was therefore unexplained to us. The only other prominent actor on behalf of the Debtors in both cases, in addition to Kuhn, was Berg, whose activities usually bear scrutiny.

As far as we can determine, Fulghum filed five adversary proceedings on behalf of Associates and Maureen, respectively, between September 27, 1991, and December 18, 1991, which can be identified as follows:

| Main Case | Adversary Number | Date of Filing | Defendants | Disposition |
|---|---|---|---|---|
| Associates | 91–0882 | 9/27/91 | Congress Title Corp. | Dismissed (settled?) |
| Associates | 91–0939 | 10/16/91 | Continental Title Ins. Co. | Dismissed (settled?) |
| Maureen | 91–0940 | 10/16/91 | Commonwealth of PA. | Withdrawn (Berg dismissed as party per Order of 1/9/92) |
| Maureen | 91–0985 | 11/8/91 | Louis Wolff, Howard Tom, Manfred Franz | Dismissed without prejudice |
| Associates | 91–1036 | 11/21/91 | Township of Pennsauken | Pending |

There is no indication on the *Associates* or *Maureen* dockets that Fulghum ever filed statements disclosing the arrangements of payment of his compensation pursuant to Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 2016(b) in either case.

The last and apparently only remaining proceeding out of the foregoing five matters, the above-captioned proceeding, first came to our attention shortly after Fulghum filed a Motion for the entry of a default judgment against the TOWNSHIP OF PENNSAUKEN, NEW JERSEY ("the Defendant"), on December 30, 1991. We refused to enter the judgment because service was effected only by mailings, by first class and certified mail, addressed to "Township of Pennsauken." We questioned whether this form of service satisfied F.R.B.P. 7004(b)(6), which requires service upon a defendant state municipality to be made as prescribed by the law of the state where the defendant is located (New Jersey) or, in the absence of any designation in the state law, to the chief executive officer of the municipality. The matter was ultimately continued to February 19, 1992.

On that date, we requested that Kuhn, Fulghum, and the United States Trustee ("the UST") appear to discuss the propriety of Fulghum's representation of Associates without appointment by this court. After agreeing to continue the instant proceeding until April 8, 1992, to allow Fulghum to reissue the summons and serve the Defendant again, the court expressed its interest in considering the broad issue of the necessity for submission of post-confirmation fee applications by Fulghum in particular, and by professionals generally, since many such applications are received by the court, adding to its already substantial workload in the area of review of fee applications. *See In re Rheam of Indiana, Inc.*, 137 B.R. 151, 155–159 (Bankr.E.D.Pa.1992) (court has the power and duty to review all fee applications despite the absence of any objections thereto). We invited all of the parties present "to file Briefs in support of

their respective positions regarding the necessity for counsel who represents a debtor post-confirmation to obtain appointment by the court and submit fee applications on or before February 28, 1992."

Only Fulghum, who had a stake in doing so, accepted our invitation. Fulghum argued, first and not surprisingly, that his appointment was not required under 11 U.S.C. § 327(a) because, presumably by effect of the language of 11 U.S.C. § 1141(b), which provides that confirmation revests all property of the erstwhile debtor's estate in the reorganized debtor, "administration of the estate has ended," and "there is no longer any estate" from which "funds-in-court" are to be paid. *See Rheam of Indiana, supra,* 137 B.R. at 156 (court supervision of fee applications is generally required because bankruptcy cases are "fund-in-court" cases, in which fees are paid out of funds of a debtor's estate).

Fulghum also raised the issue of whether disclosure of the terms of his compensation was required under 11 U.S.C. § 329(a) and F.R.B.P. 2016(b). Without directly answering this question and leaving the clear inference that he has filed no F.R.B.P. 2016(b) statement, Fulghum suggested that, since confirmation ends the "rehabilitation process" which is subject to court oversight, this court lacked jurisdiction to apply § 329(a) to his post-confirmation services.

We agree with Fulghum's implicit suggestion that this is a confusing area. We believe that some further clarification is necessary, and therefore we have requested the UST to offer some input to us prior to our rendering our final views on these issues. We have located no decisions in this or any other jurisdiction which are directly on point. However, some guidance can be gleaned from decisions addressing a few related issues.

There is a line of cases, several of which are cited by Fulghum, which hold that a bankruptcy court cannot grant administrative claims, pursuant to 11 U.S.C. § 503(b)(1)(A), on account of post-confirma-

tion services or expenses. *See In re Frank Meador Buick, Inc.*, 65 B.R. 200, 203–04 (W.D.Va.1986) (rent); *United States v. Redmond*, 36 B.R. 932 (D.Kan.1984) (taxes); and *In re Barker Medical Co.*, 55 B.R. 435 (Bankr.M.D.Ala.1985) (services by creditors). Fulghum reads these cases as supporting his argument that confirmation terminates a debtor's estate.

Perhaps more pertinent and in one sense supportive of Fulghum's position is another line of cases holding that, although the foregoing cases correctly interpret § 503(b)(1)(A), post-confirmation attorneys' fees are governed by 11 U.S.C. § 503(b)(2), "which makes no reference to the estate." *In re Sultan Corp.*, 81 B.R. 599, 601 (9th Cir.BAP 1987); and *In re Tri–L Corp.*, 65 B.R. 774, 777 (Bankr.D.Utah 1986). *Accord, In re Hays Builders, Inc.*, 99 B.R. 848 (Bankr.W.D.Tenn.1989). The foregoing cases therefore conclude that, since the court "must retain some jurisdiction after confirmation to see that the plan is consummated," and attorneys' services "are often required in order to carry out the provisions of the plan," *Tri–L, supra*, 65 B.R. at 779, compensation may be paid from estate funds for post-confirmation services performed in furtherance of the plan under § 503(b)(2).

In one sense, this line of cases undermines Fulghum's argument that court approval of fee applications ends at confirmation. The courts in these cases did require fee applications to be filed and reviewed before counsel was allowed compensation. However, these decisions appear intended to be counsel-friendly. Counsel in those cases had been previously appointed as general counsel and wanted to recover payment of compensation from the respective debtor estates as administrative expenses.

Finally, the following passage of *Tri–L, supra*, 65 B.R. at 777–78, appears to support Fulghum's ultimate position that it was not necessary that he be appointed:

When the plan of reorganization was confirmed and property of the estate vested in the reorganized debtor, *the reorganized debtor was free to employ attorneys and other professional per-*

*sons without obtaining authority from the bankruptcy court to do so. See* 11 U.S.C. §§ 327(a), 1107(a) (only the Chapter 11 debtor in possession and trustee require court approval to employ professional persons). *Cf. In re Auto West, Inc.*, 43 B.R. 761 (D.Utah 1984) (reorganized debtor sought and obtained court approval for special counsel's employment). It follows that unless the bankruptcy court could and did retain jurisdiction to determine allowances of professional fees, such fees would not be "awarded under Section 330(a)" and would not constitute an administrative expenses excepted form Section 348(d) (emphasis added).

Less comforting to Fulghum would be the different twist put upon this issue by the decision in *In re Aylesbury Inn, Inc.*, 121 B.R. 675 (Bankr.N.D.N.Y.1990), in which the court denied a fee application of counsel for an official creditors' committee covering services performed post-confirmation. The court carefully reviewed the debtor's confirmed plan to determine whether the court properly retained jurisdiction over the subject-matter of the services for which compensation was sought. *Id.* at 677–68. Despite a plan provision expressly allowing the court to retain jurisdiction to decide fee applications, the court held that substantial consummation of the plan by commencement of payments divested the court of jurisdiction and effectively terminated the existence of the committee. It therefore relegated counsel

to a court of competent jurisdiction to seek enforcement of its rights which arise from the contractual nature of the confirmed plan or under other applicable law. *See In re Ernst*, 45 B.R. 700, 702–03 (Bankr.D.Minn.1985); *In re Balogun*, 56 B.R. 117, 119 (Bankr.M.D.Ala.1985).

*Id.* at 678. *But see In re Shirley*, 134 B.R. 940 (9th Cir.BAP 1992) (attorney denied counsel fees due to failure to obtain appointment as required by Bankruptcy Code is barred from any recovery from the debtor under state law as well).

We believe that the *Aylesbury Inn* court is correct in its analysis that the court's

power over fee applications must be related to the issue of its subject-matter jurisdiction to hear the post-confirmation matters in furtherance of which services were rendered. For this reason, Fulghum may have proved too much in his argument that confirmation ended this court's involvement with Associates. If court involvement was ended, it is difficult to see how this court could have retained subject-matter jurisdiction to hear this proceeding, as well as perhaps the other four proceedings which Fulghum instituted on behalf of Berg-related entities.

■■■ A plan is "substantially consummated" and arguably a candidate for a Final Decree and closing as soon as payments commence under the plan, not when they are completed. See In re Burlingame, 123 B.R. 409, 411–12 (Bankr. N.D.Okla.1991); In re Fansal Shoe Corp., 119 B.R. 28, 30–31 (Bankr.S.D.N.Y.1990); and In re Hayball Trucking, Inc., 67 B.R. 681 (Bankr.E.D.Mich.1986). A bankruptcy is not "forever;" after confirmation, a debtor must normally "go about its business without further supervision or approval" from the bankruptcy court. Pettibone Corp. v. Easley, 935 F.2d 120, 121, 122 (7th Cir.1991). See also, e.g., In re Hall's Motor Transit Co., 889 F.2d 520, 522 (3d Cir.1989); In re Greenley Energy Holdings of PA., Inc., 110 B.R. 173, 180–82 (Bankr.E.D.Pa.1990); and In re Almarc Corp., 94 B.R. 361, 365–66 (Bankr.E.D.Pa. 1988). Closed bankruptcy cases can of course be reopened to allow bankruptcy courts to decide matters clearly within their jurisdiction which subsequently and unexpectedly arise. However, cases should not be kept open on the mere chance that later issues pertinent to this court's jurisdiction might arise, and reopening should occur only after a determination is made that this court, as opposed to any other, is the most appropriate forum to resolve any issues which do arise.

We now turn to the Complaint in the instant proceeding and the Associates Plan to determine whether we indeed do have subject-matter jurisdiction to hear this proceeding. See Greenley Energy, supra, 110

B.R. at 179–80 (court always retains power to examine its subject-matter jurisdiction sua sponte).

The Complaint pleads three Counts. In the first, the Debtor requests that we "reallocate" its post-petition tax payments to the Defendant because interest and rebates on payment of pre-petition taxes were allegedly erroneously computed by the Defendant. The second Count asks this court to eliminate any lien of the Defendant against the Debtor's property arising on account of delinquent pre-petition tax payments, asserting that same are violative of Plan provisions allowing the Debtor to be vested with title to its property free and clear. In the third Count, the Debtor invokes 11 U.S.C. § 505 to seek to have this court compel the Defendant to reassess the property for future tax events.

The Associates Plan recites that this court will retain jurisdiction of seven types of matters pending "full" consummation of the Plan: (1) determination of claims; (2) questions regarding title to estate assets; (3) correction of defects in the Plan or court orders; (4) modification of the Plan; (5) enforcement and interpretation of the Plan; (6) orders to enforce the terms of a contemplated sale of Associates' property; and (7) entry of an order "consummating and terminating this case."

We find these Plan provisions to be rather unremarkable. No provision appears to necessarily contemplate our retaining jurisdiction over the type of post-confirmation action reflected in the instant proceeding. We therefore question whether we have subject-matter jurisdiction over this proceeding, even under the terms of the Plan.

■■■ There is no allegation that the Defendant is or was a listed creditor of Associates or a claimant in this bankruptcy case. We therefore question the propriety of our becoming involved with previous allocations of tax payments to, and future assessments against, the Debtor's property by the Defendant. With respect to the Defendant's liens against the property, it seems clear that, unless the Plan specifically provided for a different treatment, these

liens would pass through the bankruptcy case unaffected. *See Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 778–79, 116 L.Ed.2d 903 (1992); and *Estate of Lellock v. Prudential Ins. Co.,* 811 F.2d 186, 187–90 (3d Cir.1987). We do not believe that the lien rights of a party which may have never received notice of the plan confirmation process nor participated in a bankruptcy case can be compromised by general provisions in a debtor's plan regarding post-confirmation payment of taxes and vesting of liens, which seem to be the reference points of Count II of the Complaint.

Although the Plan's terms do purport to confer broad jurisdiction upon this court to hear certain matters through the date of "full" consummation of the Plan, it must be recalled that

> parties cannot confer subject matter jurisdiction by agreement. *See, e.g., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *In re Dr. C. Huff Co.,* 44 B.R. 129, 134 (Bankr.W.D.Ky.1984). Thus, even though the terms of a confirmed plan may be binding upon the debtor and its creditors, 11 U.S.C. § 1141; *see, e.g., In re Ruti–Sweetwater, Inc.,* 836 F.2d 1263 (10th Cir.1988), that alone is insufficient to provide a jurisdictional source.

*Almarc, supra,* 94 B.R. at 365.

We have serious doubts as to whether this court has subject-matter jurisdiction over the instant proceeding. We will refrain from dismissing this proceeding at this time, because we had not previously suggested this disposition to the parties and consider it appropriate to allow Fulghum or any other interested party an opportunity to comment before we act.

■ The conclusion that this court lacks subject-matter jurisdiction to hear this proceeding, and may well have lacked subject-matter jurisdiction over all five proceedings in the two Berg-related cases filed by Fulghum, is helpful to Fulghum in establishing an exemption from the 11 U.S.C. § 327(a) requirement. It seems to us, as *Aylesbury Inn* suggests, that either this court has jurisdiction over these matters and appoint-

ment of counsel to handle them is necessary, or it lacks subject-matter jurisdiction over them and no appointment of counsel need be made by this court.

■ However, one other issue demands attention and may be of less comfort to Fulghum. Irrespective of whether Fulghum must be appointed by this court as debtors' counsel to receive compensation for his services, it is quite clear that, under 11 U.S.C. § 329(a) and F.R.B.P. 2016(b), the mere fact that he is "representing a debtor in a case under this title," requires that he file a "statement of the compensation paid or agreed to be paid," 11 U.S.C. § 329(a), "within 15 days after any payment or agreement" has been entered. F.R.B.P. 2016(b).

In *In re Fricker,* 131 B.R. 932, 937–41 (Bankr.E.D.Pa.1991), we observed that the filing of a F.R.B.P. 2016(b) statement is mandatory and that the failure to satisfy this requirement generally results in the elimination of any right of counsel to collect or retain any compensation received. We also note that, not only is the F.R.B.P. 2016(b) requirement not relaxed when counsel need not be appointed by the court, but its importance is heightened, because, in that instance, the court will have no other method of investigating a debtor's contracts with professional persons. *Id.* at 939–41.

■ We expressly reject Fulghum's suggestion that this court lacks jurisdiction to review the terms of his compensation under 11 U.S.C. § 329 and F.R.B.P. 2016(b). There is no end-point to the application of § 329 and F.R.B.P.2016. The mere fact that Fulghum filed the instant proceeding and the other four Berg-related proceedings *in this court* triggers application of § 329 and F.R.B.P. 2016(b). The scope of these disclosure provisions is, if anything, broader than the subject-matter jurisdiction of this court to hear and determine the merits of these proceedings.

We will therefore require that Fulghum promptly file and serve upon us a F.R.B.P. 2016(b) statement. It will also be necessary for Fulghum to ultimately file a de-

tailed fee application in order that this court can determine whether the payments which he has received and may receive are excessive, in order that any excessive payments can be ordered returned to the estate of the Debtor or the payee. *See In re Trinsey,* 121 B.R. 462, 472 (Bankr.E.D.Pa. 1990), *rev'd,* C.A. Nos. 91–0958 & 91–0959 (E.D.Pa. February 25, 1992).