950 F.2d 1531
 60 USLW 2481, 26 Collier Bankr.Cas.2d 468,
22 Bankr.Ct.Dec. 804,
Bankr. L. Rep. P 74,434
 In re John W. MORRIS, d/b/a John Morris Building Systems, Debtor.
FIDELITY & DEPOSIT COMPANY OF MARYLAND; Anniston Housing
Authority, Plaintiffs-Appellants, Cross-Appellees,
v.
John W. MORRIS, d/b/a John Morris Building Systems,
Defendant-Appellee, Cross-Appellant.
 No. 90-7632.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 15, 1992.
 
 Thomas J. Knight, Anniston, Ala., for plaintiffs-appellants, cross-appellees.
 Kenneth T. Horton, John T. Hinchey, Phillips, Hinchey & Reid, Atlanta, Ga.; Bruce N. Adams, Wilson, Pumroy, Rice & Adams; and Thomas M. Sowa, and Richard H. Cater, Burnham, Klinefelter, Halsey, Jones & Cater, Anniston, Ala., for defendant-appellee, cross-appellant.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before HATCHETT and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.
 DUBINA, Circuit Judge:
 
 
 1
 John W. Morris, d/b/a John Morris Building Systems ("Morris"), appeals the district court's judgment that the bankruptcy court did not have jurisdiction to hear his adversary proceeding against the Anniston Housing Authority ("the Authority") after his Chapter 11 bankruptcy case was dismissed. For the reasons which follow, we reverse the district court.I. FACTUAL BACKGROUND
 
 
 2
 Morris, a building contractor, built two housing projects for the Authority. Morris was unable to complete the construction, and as a result, the Authority had to call upon Fidelity & Deposit Company of Maryland ("Fidelity"), which had issued a bond to Morris, to provide the funds needed to finish the project. Fidelity paid the Authority the difference between the total amount necessary to complete the project and the retainage withheld from Morris, and agreed to indemnify the Authority in the event Morris made any claim for the retainage. Morris filed a Chapter 11 reorganization in 1985. He also filed an adversary proceeding in the bankruptcy court against the Authority for the unpaid retainage.
 
 
 3
 Morris' Chapter 11 case remained essentially dormant for approximately three years. In February 1988, the bankruptcy court noted that Morris had not filed a plan of reorganization or the required disclosure statements and operating reports, and entered an order to show cause why the case should not be dismissed. After an additional eighteen months of inactivity, the bankruptcy court entered a second show cause order. In August 1989, the bankruptcy court dismissed Morris' Chapter 11 case.
 
 
 4
 Morris was more active in litigating the adversary proceeding. After the Chapter 11 case was dismissed, the bankruptcy court held a hearing in September 1989 on a show cause order regarding the dismissal of the adversary proceeding. The Authority's attorney mentioned to the bankruptcy court that the Chapter 11 case had been dismissed and that he thought the case would be more appropriately tried in state court, but he did nothing further to object to the jurisdiction of the bankruptcy court. The bankruptcy court proceeded to set the case for trial in October. The trial resulted in the bankruptcy court's ruling in favor of Morris and entering judgment against the Authority in the amount of $107,465.08. Thereafter, the Authority filed motions for new trial and to set aside judgment, which the bankruptcy court denied. In addition, Fidelity sought unsuccessfully to intervene in the case.
 
 
 5
 The Authority appealed the bankruptcy court's decision to the district court, and Fidelity appealed the denial of its motion to intervene. The district court did not reach the merits of their appeals, but concluded that the bankruptcy court did not have subject matter jurisdiction over the adversary proceeding. The district court found that the bankruptcy court lost jurisdiction over the adversary proceeding because it did not expressly retain jurisdiction of that proceeding in its order dismissing the Chapter 11 case. Alternatively, the district court found that the bankruptcy court abused its discretion in retaining jurisdiction of the adversary proceeding and trying the case because of Morris' lack of good faith as demonstrated by his failure to pursue the Chapter 11 reorganization. Morris then perfected his appeal to this court on the jurisdictional question. The Authority and Fidelity filed cross-appeals urging us to reach the merits of their appeals to the district court if we find jurisdiction.[1]
 
 II. DISCUSSION
 
 6
 We must first determine whether a federal court may retain jurisdiction of an adversary proceeding related to a bankruptcy case after the underlying bankruptcy case is dismissed. Conclusions of law made by either the bankruptcy court or the district court are subject to de novo review. In re Calvert, 907 F.2d 1069, 1070 (11th Cir.1990); In re Sublett, 895 F.2d 1381, 1383 (11th Cir.1990).
 
 
 7
 The jurisdictional issue before us presents a question of first impression in this circuit. The Third Circuit has previously examined a similar issue, however, and concluded that the bankruptcy court properly retained jurisdiction of an adversary proceeding following the discharge of the debtor. See In re Smith, 866 F.2d 576 (3d Cir.1989). The Smith court recognized that the dismissal of a bankruptcy case normally results in the dismissal of related proceedings because federal jurisdiction is premised upon the nexus between the underlying bankruptcy case and the related proceedings, but noted that the general rule is not without exceptions. Smith, 866 F.2d at 580.
 
 
 8
 In addition to the Third Circuit, numerous bankruptcy and district courts have addressed the precise issue presented by this case. These courts have consistently held that, notwithstanding the general rule, nothing in the statute governing jurisdiction granted to the bankruptcy courts prohibits the continuance of federal jurisdiction over an adversary proceeding which arose in or was related to a bankruptcy case following dismissal of the underlying bankruptcy case. See, e.g., In re Churchfield Management & Inv. Corp., 122 B.R. 76, 81 (Bankr.N.D.Ill.1990); In re Tim Wargo & Sons, Inc., 107 B.R. 626 (Bankr.E.D.Ark.1989); In re Kost, 102 B.R. 834, 835 (D.Wyo.1989); In re Tennessee Valley Center for Minority Economic Dev., Inc., 99 B.R. 845, 846 (Bankr.W.D.Tenn.1989); Un-Common Carrier Corp. v. Oglesby, 98 B.R. 751, 753 (S.D.Miss.1989); Hudak v. Woods, 91 B.R. 718, 720 (W.D.Pa.1988), aff'd in part & remanded in part, 879 F.2d 857 (3d Cir.) (unpublished opinion), cert. denied, 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989); In re GWF Inv., Ltd., 85 B.R. 771, 780 (Bankr.S.D.Ohio 1988); In re Walton, 80 B.R. 870, 874 (Bankr.N.D.Ohio 1987); In re Stardust Inn, Inc., 70 B.R. 888, 890 (Bankr.E.D.Pa.1987); In re Pocklington, 21 B.R. 199, 201 (Bankr.S.D.Cal.1982); In re Lake Tahoe Land Co., 12 B.R. 479, 480-81 (Bankr.D.Nev.1981).
 
 
 9
 In the case before us, the district court analogized federal court jurisdiction over adversary proceedings to pendent state claims. The district court reasoned that if a case with pendent claims was closed without the court's expressly retaining jurisdiction of the pendent claims, those claims would be dismissed; likewise, the bankruptcy court's dismissal of Morris' Chapter 11 case without expressly retaining jurisdiction over the unresolved adversary proceeding terminated the entire matter. We disagree with the district court. The disposition of an adversary proceeding is appropriately compared to the disposition of pendent state claims, but there is a distinction between the two that is critical to our resolution of this issue. Unlike a lawsuit in which a claim that gives rise to federal subject matter jurisdiction coexists with pendent or ancillary state claims, an adversary proceeding in the bankruptcy court and the companion bankruptcy case are two distinct proceedings. Since two separate cases are involved, express retention over the adversary proceeding upon disposition of the related bankruptcy case is unnecessary.
 
 
 10
 We find the reasoning of the courts which have previously considered the threshold issue presented by this case to be persuasive, and conclude that the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement. The decision whether to retain jurisdiction over the adversary proceeding should be left to the sound discretion of the bankruptcy court or the district court, depending upon where the adversary proceeding is pending.
 
 
 11
 Because we find that jurisdiction over Morris' adversary proceeding was not lost after the underlying bankruptcy case was dismissed, we must now determine whether the bankruptcy court abused its discretion by retaining jurisdiction over the adversary proceeding and undertaking the trial of the case. Our review of the bankruptcy court's decision to dismiss the Chapter 11 case but not the adversary proceeding is de novo. See In Re Sublett, 895 F.2d at 1384. The bankruptcy court's retention of the adversary proceeding was reviewable by the district court on appeal for abuse of discretion. The question before us is whether the district court was correct when it concluded that the bankruptcy court abused its discretion. Id.
 
 
 12
 Although dismissal of the bankruptcy case usually results in dismissal of all remaining adversary proceedings, 11 U.S.C. § 349 gives the bankruptcy court the power to alter the normal effects of the dismissal of a bankruptcy case if cause is shown. Un-Common Carrier, 98 B.R. at 753; Pocklington, 21 B.R. at 202. The rationale for retention of jurisdiction over an adversary proceeding in an appropriate case can be explained as follows:
 
 
 13
 The bankruptcy court's jurisdiction to decide any matter is invoked by the filing of a bankruptcy petition. Absent that filing, the bankruptcy court is without power to decide the rights of any parties. On the other hand, during the pendency of a bankruptcy case, especially a reorganization case, the court enters orders that alter the rights of parties and the parties themselves enter into agreements that alter their rights; all because of the peculiarities of bankruptcy.
 
 
 14
 * * * * * *
 
 
 15
 Section 349 acknowledges that some cases ... have progressed so far that judicial interference is needed to unravel or preserve the rights of parties.
 
 
 16
 Un-Common Carrier, 98 B.R. at 753 (quoting In re Lerch, 85 B.R. 491, 493 (Bankr.N.D.Ill.1988), aff'd, 94 B.R. 998 (N.D.Ill.1989)). Those courts which have examined the circumstances under which discretionary jurisdiction of an adversary proceeding should be exercised have utilized the following factors in determining whether jurisdiction should be retained: (1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related legal issues involved. Smith, 866 F.2d at 580; see also Stardust Inn, 70 B.R. at 890; Pocklington, 21 B.R. at 202.
 
 
 17
 The Third Circuit reviewed the bankruptcy court's retention of jurisdiction in Smith for abuse of discretion. The debtor in Smith initially filed a Chapter 13 petition, then commenced an adversary proceeding. The bankruptcy court tried the adversary proceeding, but prior to its disposition the debtor converted her Chapter 13 proceeding to a Chapter 7 case and received a discharge. Several months later, the bankruptcy court ruled against the debtor in the adversary proceeding. She appealed to the district court, which affirmed the bankruptcy court. On appeal to the Third Circuit, the prevailing parties in the adversary proceeding challenged the federal courts' continued exercise of jurisdiction over the adversary proceeding after the debtor's discharge. The Third Circuit determined that the bankruptcy court had not abused its discretion in retaining jurisdiction of the adversary proceeding. Judicial economy and fairness to the debtor weighed heavily in favor of the bankruptcy court's retention of jurisdiction, particularly since the adversary proceeding had already been tried when the debtor received her discharge. Smith, 866 F.2d at 579-80.
 
 
 18
 The bankruptcy court in the present case also based its retention of jurisdiction on the factors of judicial economy, fairness, and convenience to the litigants. At the time the bankruptcy court held a hearing on its show cause order relative to the adversary proceeding, the case had been pending for over four years and was ready for trial. We cannot fault the bankruptcy court for proceeding to trial rather than sending the case to state court to start all over. Although the Authority and Fidelity argue that the difficulty of the legal issues favors a trial in state court, we are not persuaded that this factor is so overwhelming that it outweighs the others.
 
 
 19
 The district court's finding that the bankruptcy court abused its discretion emphasized Morris' lack of good faith in failing to actively pursue his Chapter 11 case. Regardless of the district court's opinion concerning Morris' actions, the decision of the bankruptcy court was entitled to deference. Morris claims that his lack of activity in the bankruptcy case was due to the fact that the retainage claimed from the Authority was his principal asset, and his formulation of a plan depended on knowing the outcome of the adversary proceeding. Based upon the record before us, we cannot say that the bankruptcy court abused its discretion by retaining jurisdiction over the adversary proceeding, and find that the district court erred in so concluding.
 
 III. CONCLUSION
 
 20
 We reverse the judgment of the district court and remand this case to the district court with directions that on remand it consider the merits of the appeals taken by the Authority from the bankruptcy court's ruling in favor of Morris and by Fidelity from the bankruptcy court's denial of its motion to intervene.
 
 
 21
 REVERSED and REMANDED with directions.
 
 CLARK, Senior Circuit Judge, dissenting:
 
 22
 I respectfully dissent from the majority's conclusion that the district court erred in finding that the bankruptcy court did not have jurisdiction to try the adversary proceeding after having closed the underlying Chapter 11 proceeding. That pending proceeding was the only source of the bankruptcy court's jurisdiction to try this state court action in the first place. The error would be more palatable to me if the majority had coupled its reversal with a holding that the judgment would only be reinstated upon the debtor's moving for a reopening of the underlying Chapter 11 proceeding pursuant to 11 U.S.C. § 350.[1] As the matter now stands, assuming the district court finds no error in the trial of the case, debtor Morris has a judgment against the City of Anniston free from any obligation to pay his creditors who filed claims in the Chapter 11 proceeding.
 
 
 23
 Morris filed his Chapter 11 proceeding January 28, 1985, showing debts in excess of $600,000. and assets of $787,000. of which the claim under the contract with Anniston Housing Authority amounted to $700,000. It is that claim which was litigated by the bankruptcy court after closing the proceeding.
 
 
 24
 Prior to 1978 Morris' proceeding would have been pursuant to Chapter Ten of the old Act and the suit against the Housing Authority was not within the jurisdiction of the Bankruptcy Court. It would have been tried either in state court or the U.S. District Court. It is unnecessary to go into the history of the 1978 and 1984 Acts.[2] Suffice it to say that the lawsuit between Morris and the Housing Authority was a "related proceeding" under the new Act as discussed in the literature. District courts have original jurisdiction over related proceedings but they are normally referred to the bankruptcy courts for trial by a standing order in the local district court rules. In this case the defendant moved to withdraw the proceeding which the district court denied. That court thought it was a core proceeding because it had started out as a turnover proceeding. I reach the opposite conclusion, but it makes no difference. It is my view that neither an adversary proceeding covered by Part VII of the Bankruptcy Rules nor a contested matter as described by Rule 9014 can be tried to judgment by a bankruptcy judge after a bankruptcy proceeding has been closed.
 
 
 25
 In the bankruptcy judge's "Rule to Show Cause why case should not be dismissed" issued in the underlying main proceeding on July 19, 1989, he recited that no plan of reorganization or disclosure statement had been filed by any party, that the debtor was unable, or had abandoned his intent to effectuate a plan and that the case was due to be dismissed unless some party in interest should show cause to the contrary. On August 9, 1989 the court entered its order reciting the foregoing, stating that no objections had been filed, and that the case "is dismissed and closed." The clerk was directed to notify all parties, which was done according to the clerk's certificate. A bankruptcy closing report is filed. There are no further entries on the docket sheet and the file is marked closed.
 
 
 26
 The adversary proceeding was carried as a separate file and it became dormant in 1987 except for two documents filed in 1988. Then interestingly on August 25, 1989, the bankruptcy court entered a Rule to Show Cause in that proceeding, reciting that it appeared that the plaintiff had abandoned the case, and that it was due to be dismissed unless good cause be shown. The only parties served with this Rule to Show Cause were plaintiff's attorney, defendant's attorneys, and the bankrupt's administrator. Morris' attorney filed an objection to the dismissal and a hearing was conducted September 12, 1989, with Morris and the Housing Authority being represented. The following colloquy ensued during the hearing:
 
 
 27
 Mr. Cater: (For Housing Authority) I might point out to the Court that the case that this arises out of has been dismissed. There is no longer a case--
 
 
 28
 THE COURT; What does that have to do with what we're talking about?
 
 
 29
 Mr. Cater: Judge, except for the fact that this originated in Bankruptcy Court, this would be a case tried in state court. There is an action pending in state court which has been stayed so long as Mr. Morris was in bankruptcy. And this was a very appropriate forum for resolving those issues.
 
 
 30
 THE COURT: You mean this is duplicitous of that?
 
 
 31
 MR. CATER: Yes, sir.
 
 
 32
 THE COURT: Is that correct, Mr. Knight?
 
 
 33
 MR. KNIGHT: I don't think so, Judge. I'm not sure exactly what there is pending over there. It seems there was a supplier's action against the Anniston Housing Authority.
 
 
 34
 MR. CATER: There was a claim against Mr. Morris and Bobbie Morris for indemnification of the bonding company. It will resolve the issue of whether Mr. Morris owes the bonding company or whether the bonding company owes Mr. Morris.
 
 
 35
 The fact that the claim under that agreement greatly exceeds the amount claimed by Mr. Morris in the retainage--
 
 
 36
 THE COURT: Why haven't you sought leave to go ahead and try that? Why haven't you gone ahead and tried it since the bankruptcy case has been dismissed?
 
 
 37
 MR. CATER: Judge, the bankruptcy case has only been dismissed a short time.
 
 
 38
 THE COURT: How long?
 
 
 39
 MR. CATER: Less than thirty days, I believe.
 
 
 40
 MR. KNIGHT: Your Honor, these claims are not pending in the Circuit Court. I guess Mr. Cater is suggesting that something new could be filed by the debtor in the Circuit Court.
 
 
 41
 THE COURT: How long will it take you to be ready to try it.?
 
 
 42
 MR. CATER: Judge, as far as the attorney, we're ready. We would like to have a day or two to see what is the posture of our witnesses.
 
 
 43
 MR. KNIGHT: Your Honor, I would have some witness problems. There are some subcontractors and I just don't know where they are.
 
 
 44
 Trial of the case commenced October 12, 1989 and concluded October 13th. I join with the district court in concluding that the bankruptcy court lacked jurisdiction. The majority states the following after citing certain cases:
 
 
 45
 These courts have consistently held that, notwithstanding the general rule ["that the dismissal of a bankruptcy case normally results in the dismissal of related proceedings"], nothing in the statute governing jurisdiction granted to the bankruptcy courts prohibits the continuance of federal jurisdiction over an adversary proceeding which arose in or was related to a bankruptcy case following dismissal of the underlying bankruptcy case.
 
 
 46
 Maj. op. p. 1534.
 
 
 47
 The majority relies on a number of cases which I respectfully submit do not apply. The district court pointed out that Smith[3] is distinguishable "noting that there was no dismissal order in In re Smith, only an order discharging the debtor."
 
 
 48
 In Re Churchfield Management[4] is another case which had not been finally closed when the adversary proceeding commenced, although the debtor's plan had been confirmed. The court said,
 
 
 49
 ... courts have consistently upheld post-confirmation jurisdiction to recover preferential payments where the plan of reorganization provided for retention of jurisdiction.
 
 
 50
 Nothing like this happened in this case. This is a case where the debtor did nothing in the main proceeding for several years and the case was dismissed because of inaction.
 
 
 51
 In re Tim Wargo & Sons, Inc.,[5] relied upon by the majority also is inapposite as shown by that court's own statements:
 
 
 52
 As a general rule, the dismissal of a bankruptcy case should result in the dismissal of "related proceedings" because the Court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings. In re Smith, 866 F.2d 576, 580 (3rd Cir.1989). Although most bankruptcy courts have dismissed related proceedings after termination of the bankruptcy case a question may remain whether the court may exercise its discretion to retain jurisdiction over the related claims.
 
 
 53
 ....
 
 
 54
 Even if this bankruptcy court found that it has the discretion to retain jurisdiction over a related proceeding after termination of a bankruptcy case, it does not find that there are any factors regarding this particular case which would persuade the Court to retain jurisdiction.
 
 
 55
 ....
 
 
 56
 The Court specifically found that this debtor, for some four years had embarked on a course of conduct exhibiting delay, abuse of the bankruptcy system, inattention and negligence.
 
 
 57
 ....
 
 
 58
 To retain jurisdiction over a "related proceeding" which premised its prayer for relief upon an allegation that the property subject of the matter was necessary to an effective reorganization, would be ludicrous.
 
 
 59
 Another case relied upon by the majority, In re James F. Kost,[6] the district court again repeats the general rule and the exception:
 
 
 60
 As a general rule, dismissal of a bankruptcy case should result in a dismissal of all remaining adversary proceedings.... However, under 11 U.S.C. § 349, the bankruptcy court has power to alter the normal effects of a dismissal of a bankruptcy case if cause is shown (citations omitted).
 
 
 61
 The court in Kost points out that there must be some equitable reason shown to justify a bankruptcy court maintaining jurisdiction of an adversary proceeding. In this case neither the bankruptcy court nor the majority point to any equitable or rational reason for the bankruptcy court trying this case rather than letting the state court try the case where it was already pending. The majority approves the use of a federal forum to try a state court action without any earthly or equitable reason.
 
 
 62
 In re Tennessee Valley Center for Minority Economic Development, Inc.[7] does not in any way support the majority's position. The opening paragraph and accompanying footnote clearly show that the bankruptcy court retained jurisdiction but for a good reason:
 
 
 63
 On April 27, 1989, this court dismissed the instant Chapter 11 case, but retained jurisdiction to determine whether or not the debtor's attorney should be required to restore the unearned portion of the pre-petition retainer fee.*
 
 
 64
 The majority also relies on Un-Common Carrier Corp. v. Oglesby.[8] While stating the general rule that normally an adversary proceeding falls if the main proceeding is dismissed, the district court proceeded to dismiss the adversary proceeding on the basis that no party was prejudiced by the dismissal, nor had any other just cause been shown.
 
 
 65
 Hudak v. Woods,[9] is a district court case where the court held that it had jurisdiction to hear a claim of alleged contempt arising out of an adversary proceeding even though the main proceeding in bankruptcy had been dismissed. Again, I do not see how this case supports the majority opinion.
 
 
 66
 In re GWF Investment, Ltd.,[10] is an excellent opinion with respect to jurisdictional issues in bankruptcy. Its holding does not support the majority opinion. The court held:
 
 
 67
 On March 25, 1987 the court entered an order approving the trustee's final account, discharging the trustee, and closing the bankruptcy estate. No motion to reopen the estate has been made.
 
 
 68
 It must now be decided whether bankruptcy jurisdiction has continued to enable the court to adjudicate these two adversary proceedings despite the closing of Debtor's underlying bankruptcy case. As a general rule jurisdiction over bankruptcy proceedings ceases with the closing of a bankruptcy estate.
 
 
 69
 ....
 
 
 70
 ... this court finds a clear congressional intent that bankruptcy jurisdiction continues for the purpose of deciding proceedings "arising under" title 11, despite the closing of the bankruptcy case. (Congressional intent with respect to proceedings "arising in" title 11 cases is less certain.) But this court discerns no Congressional intent that bankruptcy jurisdiction should continue for matters not involving the enforcement of rights created by title 11, but that are merely "related to" cases under title 11. Although there may be some narrow exceptions for the continuance of jurisdiction, even with regard to "related to" proceedings following the closing of the bankruptcy case, ... [citations omitted] no extenuating circumstances are present here to justify the retention of jurisdiction for a "related to" matter.
 
 
 71
 ....
 
 
 72
 ... This court is unable to find that resolution of these adversary proceedings could have any possible effect upon Debtor's bankruptcy estate. No provision of the Bankruptcy Code is involved, the estate has been fully administered, and any benefit received would not inure to creditors of Debtors. Instead, any recovery by the plaintiffs in these actions would be obtained by Frederick E. Gagle and W & F Investment Company..... There is no longer a sufficient jurisdictional nexus between Debtor's estate and the outcome of this litigation. Therefore, the court finds that the Adversary Proceedings are "unrelated to" Debtor's bankruptcy case and no bankruptcy jurisdiction exists to adjudicate them. Each adversary case should be and is dismissed without prejudice.
 
 
 73
 In Re Walton,[11] also relied upon by the majority, holds that an adversary proceeding similar to the one in this case should be dismissed in light of the dismissal of the underlying Chapter 11 case for inability of debtor to effectuate a plan.
 
 
 74
 In Re Stardust Inn, Inc.[12] does hold that there are exceptions to the rule that an adversary proceeding should not be tried by a bankruptcy court after dismissal of the underlying proceeding. In Stardust "the matter has already been fully tried with all parties simply awaiting the decision of this court". In the case which our court is reviewing there is no finding by the bankruptcy court which indicates there was any reason for retaining jurisdiction of the adversary proceeding between the debtor and the Housing Authority.
 
 
 75
 In Re Pocklington,[13] the court dismissed a Chapter 13 proceeding on the motion of the debtor, "but, because of the potential of irreparable harm to the plaintiff, Auto Auction, Inc., the court retained jurisdiction over this adversary proceeding". Again, nothing remotely similar occurred in this case which would justify the bankruptcy court's retention of jurisdiction.
 
 
 76
 In Re Lake Tahoe Land Co.,[14] the court retained jurisdiction of a mortgage foreclosure proceeding for the purpose of entering a deficiency judgment that could not be obtained in state court because the statute of limitations had expired while the bankruptcy court had jurisdiction of the case.
 
 
 77
 The majority's rationale for finding jurisdiction in this case is that the case had been pending for four years and was ready for trial. My review of the file leads me to a different conclusion. The last substantive document was "Plaintiff's Responses to Defendant's Setoff Claims" which was filed in November, 1987, almost two years before the bankrupt proceeding was dismissed. Prior to that there are some filings of pre-trial statements, submissions of proposed undisputed facts, and motion for summary judgment that was never ruled upon.
 
 
 78
 Prior to dismissal of the underlying bankruptcy case nothing of consequence had been done to move the adversary proceeding along. There were no hearings, no depositions, no orders other than form ones, no witness lists, nor any lists of exhibits. What is obvious on the face of it is that the parties agreed, off the record, to try the proceeding before the bankruptcy judge and he obviously was agreeable. The court did not enter any order, as was done in the above cited cases, to indicate a reason for retaining jurisdiction of this adversary proceeding, such as avoidance of prejudice, judicial economy, or any other equitable justification for keeping this case in the bankruptcy court when there was an action between the same parties in state court that could have been activated.
 
 
 79
 The majority has created for our circuit a basis for bankruptcy court jurisdiction of adversary (related) proceedings that has not previously existed in this or any circuit. It has done so by taking an exception to the general rule and substituting the exception for the general rule. It would not be so egregious if the majority coupled its holding with the requirement that the main proceeding be reopened to permit payment of Morris' creditors from the proceeds of any final judgment obtained by Morris.
 
 
 80
 For the heretofore stated reasons, I respectfully DISSENT.
 
 
 
 [1]
 Because the district court did not rule on the merits of the case, it would be inappropriate for us to do so in this appeal. Cincinnati Ins. Co. v. Holbrook, 867 F.2d 1330, 1332 (11th Cir.1989)
 
 
 [1]
 Section 350. Closing and reopening cases
 (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
 (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.
 
 
 [2]
 28 U.S.C. §§ 157 and 1334
 
 
 [3]
 In re Johnnie Mae Smith, 866 F.2d 576, 580
 
 
 [4]
 122 B.R. 76, 80 (Bankr.N.D.Ill.1990)
 
 
 [5]
 107 B.R. 626, 627 (Bankr.E.D.Ark.1989)
 
 
 [6]
 102 B.R. 834, 835 (D.Wyo.1989)
 
 
 [7]
 99 B.R. 845, 846 (Bankr.W.D.Tenn.1989)
 
 
 *
 As a general rule, the dismissal of the main case results in a dismissal of related proceedings; however, it is discretionary with the court.... [Citations omitted]
 
 
 [8]
 98 B.R. 751 (S.D.Miss.1989)
 
 
 [9]
 91 B.R. 718 (W.D.Pa.1988)
 
 
 [10]
 85 B.R. 771, 779, 780, 781 (Bankr.S.D.Ohio 1988)
 
 
 [11]
 80 B.R. 870 (Bankr.N.D.Ohio 1987)
 
 
 [12]
 70 B.R. 888, 891 (Bankr.E.D.Pa.1987)
 
 
 [13]
 21 B.R. 199 (Bankr.S.D.Cal.1982)
 
 
 [14]
 12 B.R. 479 (Bankr.D.Nev.1981)