In re OXLEY DEVELOPMENT COMPANY, LLC, Debtor.

German American Capital Corporation, Plaintiff,

v.

OXLEY DEVELOPMENT COMPANY, LLC, Carl M. ("Chip") Drury, Tidewater Plantations, Inc., Duck Point, LLC, and Maritime Forests Holdings, LLC, Defendants.

Bankruptcy No. 12–69799–JRS.
Adversary No. 12–05568–JRS.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

May 16, 2013.

Paul Baisier, Shuman Sohrn, Seyfarth Shaw LLP, Atlanta, GA, for Plaintiff.

Dargan Scott Cole, Shaun M. Daugherty, Hall Booth Smith, PC, Will B. Geer, Law Office of Will Geer, LLC, Atlanta, GA, for Defendants.

## ORDER DENYING MOTION TO DISMISS

JAMES R. SACCA, Bankruptcy Judge.

The issue before the Court is whether this adversary proceeding against the Debtor and related entities should be dismissed because the underlying bankruptcy case was dismissed after the proceeding was filed. This case involves a loan on a real estate development project. The failure of this project coincided with the recession in the construction industry and economy in 2008. In contrast to how rapidly the economy went downhill, litigation related to this loan transaction has taken several trips down different roads, meandering through various federal and state courts over the last few years, and now finds itself in this Court. The current roadblock: Defendants' motion to dismiss for lack of subject matter jurisdiction. [Doc. 23].

### The Loan, the Development, and the Rise of the Dispute

Carl M. "Chip" Drury manages Tidewater Plantations, Inc. ("Tidewater"), which owns 100% of the membership interests in Oxley Development, LLC ("Oxley"), which was the Debtor in the underlying bankruptcy case.[1] In April 2007, Oxley agreed to borrow up to $37 million (the "Loan") from German American Capital Corporation ("GA CC") in order to develop certain property on Laurel Island in Camden County, Georgia (the "Property"). As security for the Loan, Oxley granted GACC a Deed to Secure Debt on the Property and other security. Drury and Tidewater both guaranteed the Loan. The Loan and these security agreements, along with other rights and duties of the parties, were memorialized in writing (the "Loan Agreement").

According to the Defendants, the U.S. real estate market began to collapse shortly after Oxley took out the Loan; nevertheless Oxley embarked upon a campaign to sell waterfront lots on the Property to wealthy Germans and Swiss Germans in early 2008. The Defendants allege that Oxley spent about $1.3 million to implement this marketing plan, an amount which Defendants contend GACC was required to reimburse to Oxley within seven days under the Loan Agreement. The record is unclear regarding whether or when GACC actually reimbursed Oxley, and the parties dispute whether GACC breached the Loan Agreement. The Defendants insist that GACC's failure to provide timely reimbursement led to the collapse of Oxley's sales program and caused Oxley to default on its obligations to make payments on the Loan.

---

1. Drury is the registered agent for both Tidewater and Oxley, as well as for Defendant Duck Point, LLC. Drury is a manager of Defendant Maritime Forests Holdings, LLC. The Defendants have admitted that all five may be served at the same address.

## Litigation and Foreclosure Efforts Leading to this Adversary Proceeding

GACC filed suit on the Loan in the Supreme Court of New York County, New York and won a summary judgment on May 16, 2011 against Oxley, Tidewater, and Drury for $37 million plus interest and other costs. On appeal, the Appellate Division of the Supreme Court of New York eventually affirmed the lower court decision. *German Am. Capital Corp. v. Oxley Dev. Co., LLC*, 102 A.D.3d 408, 958 N.Y.S.2d 49 (N.Y.App.Div., Jan. 3, 2013). In its opinion, the appellate court held that Oxley was unconditionally required to repay the Loan notwithstanding GACC's alleged breach (its alleged failure to timely reimburse Oxley for its marketing expenses.) *Id.* The court commented that to the extent this alleged breach of contract may amount to a viable claim, that claim may be asserted in a separate action. *Id.*

GACC domesticated this judgment by Order of the Superior Court of Fulton County, Georgia, dated September 7, 2011 (Case No. 2011–CV–204648). Then GACC advertised the Property for a nonjudicial foreclosure sale, scheduled for November 1, 2011. On October 31, 2011—the day before the scheduled foreclosure sale—Oxley filed for Chapter 11 bankruptcy protection in the U.S. Bankruptcy Court for the Southern District of Georgia, Brunswick Division (Case No. 11–21338) (the "Prior Case"). This filing triggered the automatic stay and prevented the foreclosure sale. A few months later, GACC moved for relief from the automatic stay. In May 2012, that court held an evidentiary hearing and granted GACC's motion. The next month, the Prior Case was dismissed following a motion by the U.S. Trustee.

GACC again advertised the Property for a foreclosure sale. On August 6, 2012—the day before the second scheduled foreclosure sale—Oxley filed the underlying Chapter 11 bankruptcy case in this Court. The next day—the day of the scheduled foreclosure sale—GACC filed an emergency motion for relief from stay. That afternoon, this Court held a hearing at which counsel for GACC and Oxley both appeared. After considering the arguments of the parties and all other matters of record, the Court granted GACC's motion and authorized the foreclosure sale to go forward that afternoon. The next day—August 8, 2012—the Court entered an Order confirming its oral ruling and granting GACC stay relief retroactive to 2:00 p.m. on the day before (the day of the foreclosure sale). The parties dispute whether a proper foreclosure sale ever took place: GACC alleges that it purchased the Property for $3.9 million; the Defendants allege that the foreclosure sale was not properly cried and that no valid sale took place.

## The Easement and the Title Affidavit

Also on the day before the scheduled foreclosure sale, Chip Drury—acting as manager of Oxley—granted and recorded an easement (the "Easement") on the Property to himself and Tidewater (and their successors and assignees) and certain undefined "Affiliates." [2] Then two days after GACC alleges the foreclosure sale occurred, Drury recorded an affidavit—on his own behalf and acting as manager of both Oxley and Tidewater—that sought to inform any interested parties that GACC did not have clear title to the Property (the "Title Affidavit").

---

**2.** According to the Easement, the Affiliates are defined in the Loan Agreement. GACC alleges that this term encompasses other enti-

ties which Drury allegedly controls, including Defendants Duck Point, LLC and Maritime Forests Holdings, LLC.

In the Title Affidavit, Drury appears to allege that GACC does not have clear title because (1) no valid foreclosure sale of the Property took place, (2) GACC defaulted on the Loan Agreement, (3) the foreclosure should have been governed by New York law—which requires a judicial foreclosure process—since that state's law governed the Loan Agreement, (4) this Court's oral ruling authorizing the foreclosure sale was ineffective, and (5) GACC's judgment on the Loan awaited appellate review.[3]

### Litigation of this Adversary Proceeding

On October 25, 2012, GACC filed the Complaint commencing this adversary proceeding.[4] [Doc. 1]. In its Complaint, GACC seeks a declaratory judgment that (1) GACC conducted a legally valid foreclosure sale, (2) GACC did not default under the Loan Agreement and/or any such default did not preclude foreclosure, (3) the foreclosure was governed by the laws of Georgia—not New York, (4) this Court granted effective stay relief before the alleged foreclosure sale, (5) the appeal pending in the New York courts did not prevent GACC from foreclosing, (6) the Title Affidavit was not properly recorded and is thus invalid, (7) the alleged foreclosure sale extinguished the Easement, (8) the Easement is an avoidable fraudulent transfer pursuant to 11 U.S.C. § 548 and O.C.G.A. § 18–2–70, (9) the Easement and Title Affidavit are invalid and should be cancelled in the land records, and (10) GACC is now title owner of the Property free and clear of any liens or interests of any of the Defendants. In its Complaint, GACC also included a count seeking to quiet title to the Property.

The Defendants—through a new attorney—filed a timely Answer to the Complaint. [Doc. 5]. In their Answer, the Defendants alleged additional facts and asserted three counterclaims: (1) conversion of funds they allege GACC held in trust for Oxley, (2) breach of contract for GACC's alleged failure to timely reimburse Oxley for marketing expenses, and (3) fraud—they allege GACC made false representations about its intention to reimburse Oxley as part of a scheme to precipitate Oxley's default and enable GACC to foreclose on the Property. GACC filed a timely Answer and affirmative defenses to these counterclaims. [Doc. 7].

On January 10, 2013, GACC and the Defendants filed a joint stipulation regarding discovery. [Doc. 8]. Among other things, this stipulation set certain discovery deadlines, including that the discovery period would expire on or about March 23, 2013.[5] According to GACC's Motion to Compel Discovery [Doc. 25], GACC served interrogatories, requests for production of documents and requests for admissions on the Defendants on January 24, 2013. On February 15, 2013, GACC filed a motion for judgment on the pleadings, seeking to have the Debtor's counterclaims dismissed.[6] [Doc. 9]. On February 27, 2013,

---

**3.** As explained above, that appeal has since been resolved in GACC's favor.

**4.** That day, GACC also filed a Motion for Sanctions in the underlying bankruptcy case [Case No. 12–69799–JRS, Doc. 45], which seeks sanctions against Oxley and its attorney, alleging that they filed the case in bad faith.

**5.** The discovery period within which GACC could complete discovery has been extended by orders of the Court, but has since concluded. [*See* Docs. 46 and 76].

**6.** These counterclaims were asserted in an Answer filed by all of the Defendants, but it is unclear whether it would be appropriate for this Court to determine the counterclaims of any Defendant besides the Debtor.

GACC served notice scheduling the depositions of each of the Defendants on March 15, 18, and 20, 2013. [Docs. 10–14]. On February 28, 2013—the day after the Defendants' responses to discovery were due—they informally made a request to GACC for an extension of time to respond to the discovery until March 7, 2013, to which GACC agreed. [Doc. 25]. Despite obtaining this extension to respond to discovery, the Defendants failed to respond (even to the requests for admission), which prompted GACC to file a Motion to Compel discovery responses on March 13, 2013. [Doc. 25]. On April 5, 2013, the Court entered an Order for the most part granting the Motion to Compel. [Doc. 46].

While missing several discovery deadlines, Chip Drury did find time to litigate the Debtor's counterclaims. On February 28, 2013, Drury—acting *pro se*—filed a motion seeking to extend the time to respond to GACC's motion for judgment on the pleadings.[7] [Doc. 15]. GACC objected to Drury's motion for an extension of time, and this Court held a hearing on the matter on March 12, 2013. That same day, the Court entered an Order granting Drury an extension through March 15, 2013 to file his response to GACC's motion for judgment on the pleadings. [Doc. 24]. Just before this deadline, Drury delivered to the Court a 24–page response in the form of an affidavit signed by hi m, along with hundreds of pages of supporting documents. The following Monday, he delivered to the Court an amended response in the form of an amended 35–page affidavit and hundreds more pages of supporting documents.

On April 8, 2013, GACC filed a Motion to Show Cause why Drury's wife, Kathy, should not be held in contempt for not appearing at a deposition and producing documents pursuant to a subpoena served on her. [Doc. 48]. This motion was resolved by a Consent Order entered on April 24, 2013, which included an award of attorneys' fees and costs in favor of GACC in excess of $3,000.

### Dismissal of the Underlying Bankruptcy Case

Meanwhile, Oxley's underlying bankruptcy case was dismissed. The U.S. Trustee had filed a motion to dismiss Oxley's bankruptcy case on September 28, 2012, alleging that Oxley did not have the ability to or intention to reorganize under Chapter 11 and that it filed bankruptcy in order to obstruct and delay the enforcement of one or more creditors' rights. [Case. No. 12–69799–JRS, Doc. 36]. GACC filed a limited objection to the Trustee's motion, arguing that the underlying bankruptcy case should be kept open or converted to Chapter 7 because of this adversary proceeding. Oxley—through its then-attorney—filed a response to the Trustee's motion denying that the filing was in bad faith, but stating that it did not oppose dismissal of the underlying bankruptcy case.

On October 30, 2012, the Court conducted a hearing on the Trustee's motion to dismiss the underlying bankruptcy case. The Trustee appeared and was heard, as were counsel for both GACC and Oxley. At this hearing, GACC's counsel again objected to dismissal and urged the court to retain jurisdiction over this adversary proceeding,[8] suggesting that the underlying

---

7. A few days later, Drury filed a Notice of Replacement of Counsel indicating that he would be representing himself *pro se* going forward. [Doc. 17]. GACC filed an objection to Drury's effort to replace his counsel and represent himself, alleging that Drury's efforts

were procedurally deficient and were merely an attempt to further delay proceedings. Drury has since hired another new attorney to represent him and the other Defendants.

8. GACC also urged the Court to retain jurisdiction over its motion for sanctions.

bankruptcy case should be converted to a case under Chapter 7. The U.S. Trustee opined that Chapter 7 would not be appropriate and suggested that the Court may be able to retain jurisdiction over the adversary proceeding even if the underlying bankruptcy case were dismissed. GACC's counsel expressed leeriness about giving the Defendants an opportunity to argue that this Court should not have retained jurisdiction over this adversary proceeding. In response, Oxley's counsel agreed with the Trustee that conversion to a case under Chapter 7 would be inappropriate and stated that Oxley did "not oppose dismissal with prejudice, with the understanding that the Court would retain jurisdiction to hear the Complaint in the adversary proceeding." Based on these representations and all other matters of record, the Court entered an Order on November 2, 2012 dismissing the underlying bankruptcy case and explicitly retaining jurisdiction over this adversary proceeding.[9] [Doc. 48].

### Defendants' Motion to Dismiss

On March 11, 2013—nearly four and a half months after entry of the Order dismissing Oxley's bankruptcy case—Chip Drury filed a *pro se* motion to dismiss this adversary proceeding, which is now before the Court. [Doc. 23]. Counsel for the remaining Defendants later filed a Notice of Joinder, thus joining Drury's motion. [Doc. 26]. In this motion, Drury primarily argues that the Court lacks subject matter jurisdiction over this adversary proceeding

because the underlying bankruptcy case has been dismissed.

Drury contends that this is not a core proceeding and that GACC's claims do not arise under the Bankruptcy Code or in a case under Title 11 because GACC is seeking to determine the validity, priority, or extent of GACC's interest in the Property, which is no longer property of the estate.[10] He also asserts that some of the relief GACC seeks—invalidation of the Easement and Title Affidavit and its quiet title action—are actions seeking to determine a property right under Georgia law and thus do not fall within the scope of this Court's jurisdiction under 28 U.S.C. § 1334. He also points out that GACC's fraudulent transfer claim under § 548 of the Bankruptcy Code is not unique to a bankruptcy proceeding and that GACC is simultaneously seeking relief under O.C.G.A. § 18-2-70, Georgia's version of the Uniform Fraudulent Transfers Act. According to Drury, none of GACC's claims are related to a bankruptcy case and cannot have a conceivable effect on the bankruptcy estate because the underlying case has been dismissed. GACC filed a timely response, and the question of whether this Court has subject matter jurisdiction over this adversary proceeding is ripe for adjudication.

### Bankruptcy Court Jurisdiction

The subject matter jurisdiction of bankruptcy courts is defined by statute. Congress has provided that U.S. district courts have "original and exclusive jurisdiction of all cases under Title 11," *i.e.*, bankruptcy cases. 28 U.S.C. § 1334(a). In addition to

**9.** In this Order, the Court also explicitly retained jurisdiction over GACC's motion for sanctions.

**10.** He contends that dismissal of the underlying bankruptcy revested any property of the estate to the entity it belonged to prior to filing pursuant to 11 U.S.C. § 349. This code section does provide that this reversion oc-

curs "[u]nless the court, for cause, orders otherwise." 11 U.S.C. § 349(b). Therefore, in appropriate circumstances, a court may prevent this normally automatic reversion from occurring. Also, this section does not revest title in the debtor when the property has been foreclosed or otherwise sold pursuant to a court order.

jurisdiction over the bankruptcy cases themselves, Congress has granted to the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Congress has authorized the district courts to refer any of these matters to bankruptcy judges for the district. 28 U.S.C. § 157(a). In this district, the district court has in fact referred all of these matters to the bankruptcy judges for the district. *See* N.D. Ga. R. 83.7A.

■ As extensions of the district courts, bankruptcy courts are thus authorized to hear three categories of civil proceedings ancillary to underlying bankruptcy cases: (1) those "*arising under* title 11," (2) those "*arising in* . . . a case under title 11," and (3) those that are "*related to* a case under title 11." 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a); *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 2603, 180 L.Ed.2d 475 (2011), *reh'g denied,* —— U.S. ——, 132 S.Ct. 56, 180 L.Ed.2d 924 (2011) (emphasis added).

■ Proceedings "arising under" title 11 involve "matters invoking a substantive right created by the Bankruptcy Code." *Cont'l Nat. Bank of Miami v. Sanchez (In re Toledo),* 170 F.3d 1340, 1345 (11th Cir. 1999) (citations omitted). For example, an action by a trustee to avoid a preferential transfer under 11 U.S.C. § 547 would invoke such a substantive right. *Id.* at 1348 (*citing Wood v. Wood (In re Wood),* 825 F.2d 90 (5th Cir.1987)). Proceedings "arising in" a case under title 11 are generally "administrative-type matters . . . that could arise only in bankruptcy." *Id.* at 1345 (quotations and citations omitted). Examples of matters that could only arise

in a bankruptcy case would be objections to proofs of claims and objections to discharge of particular debts. *Id.* at 1348 (*citing Wood*).

■ The third category—proceedings "related to" a bankruptcy case—is "the minimum for bankruptcy jurisdiction." *Id.* at 1345 (quotations and citations omitted). This category is "extremely broad." *Id.* In determining whether a proceeding is related to a bankruptcy case, the question is whether its outcome "could conceivably have an effect on the estate being administered in bankruptcy." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990) (*quoting Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984)). "The proceeding need not necessarily be against the debtor or against the debtor's property." *Id.* (*quoting Pacor*). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (*quoting Pacor*).

### Core and Non–Core Proceedings

A separate question from whether a bankruptcy court has subject matter jurisdiction—but one that is often confused with it—is whether the court has constitutional power to enter a final order in a proceeding. As explained above, the subject matter jurisdiction of bankruptcy courts is extremely broad. Yet for certain matters, bankruptcy courts do not have authority to enter final orders because they are considered Article I tribunals and not Article III courts.[11] To avoid certain constitutional problems, Congress amend-

---

11. Bankruptcy judges are considered Article I—not Article III—judges because they "enjoy neither tenure during good behavior nor salary protection." *Stern v. Marshall,* —— U.S. —— , 131 S.Ct. 2594, 2601, 180 L.Ed.2d 475 (2011), *reh'g denied,* —— U.S. —— , 132 S.Ct. 56, 180 L.Ed.2d 924 (2011).

ed the Bankruptcy Code in 1984 by creating two different types of proceedings: "core" and "non-core." *In re Toledo*, 170 F.3d at 1347.

■ Core proceedings include both of the first two categories described above: matters which *"arise in* a bankruptcy case or *under* Title 11." *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2605, 180 L.Ed.2d 475 (2011) *reh'g denied*, —— U.S. ——, 132 S.Ct. 56, 180 L.Ed.2d 924 (2011). (emphasis added). If a proceeding is core, the bankruptcy court may enter final orders and judgments. 28 U.S.C. § 157(b)(1); *Stern*, 131 S.Ct. at 2603.

■ In non-core proceedings, on the other hand, the bankruptcy court may still hear the matter but must submit proposed findings of fact and conclusions of law to the district court, which then enters a final judgment after considering the proposed findings and conclusions and any objections to them *de novo*. 28 U.S.C. § 157(c)(1).[12] Non-core proceedings are those that fall into the third category of bankruptcy jurisdiction: those that are simply related to the underlying bankruptcy case. *Stern*, 131 S.Ct. at 2605 ("The terms 'non-core' and 'related' are synonymous") (*quoting* COLLIER ON BANKRUPTCY ¶ 3.02[2], p. 3–26, n. 5 (16th ed. 2010)).

### Stern v. Marshall

Congress has provided a non-exhaustive list of sixteen core proceedings in 28 U.S.C. § 157(b)(2). *Id.* ("The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters."). The Supreme Court has concluded that one type of these listed proceedings— "counterclaims by the estate against persons filing claims against the estate"— should not necessarily have been included on this list because an action is not in fact a core proceeding when it involves "a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S.Ct. at 2622. The high court held that Congress violated the constitutional principle of separation of powers by granting such broad authority to bankruptcy courts to enter final orders in such matters. *Id.* at 2618.

In his majority opinion in *Stern*, Chief Justice Roberts took pains to point out the limited nature of the court's holding. He explained that the question presented there was a "narrow" one; that Congress had violated Article III of the Constitution "in one isolated respect"; and that removal of state law counterclaims that are not resolved in the process of ruling on a creditor's proof of claim from the definition of core does not "meaningfully" change "the division of labor in the current statute." *Id.* at 2620. He suggested that bankruptcy courts are not barred from hearing all counterclaims and that they may still propose findings of fact and conclusions of law in those proceedings. *Id.* He explained that subject matter jurisdiction was not at issue: "Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court" and "[t]hat allocation does not implicate questions of subject matter jurisdiction." *Id.* at 2607. In fact, nothing in the *Stern* opinion changes anything regarding whether a bankruptcy court has subject matter jurisdiction to hear a proceeding—only whether that court has constitutional authority to enter a final order

---

12. A bankruptcy court also may enter a final order on a non-core proceeding with a referral from the district court and the consent of all the parties. 28 U.S.C. § 157(c)(2). Here, the Defendants have yet not consented to this Court entering any final orders; therefore this provision does not currently apply.

in it.[13]

### When Jurisdiction is Determined

As explained above, bankruptcy courts have subject matter jurisdiction to hear both core and non-core proceedings but may only enter final orders on core matters. But even for non-core matters, the outcome must—at a minimum—be related to the underlying bankruptcy case and have some conceivable effect on the bankruptcy estate for the court to have subject matter jurisdiction. Here, the Defendants' main argument—that this adversary proceeding could have no conceivable impact on the Debtor's bankruptcy estate because the underlying bankruptcy case has been dismissed—would be persuasive if the time for determining subject matter jurisdiction was when they filed their motion. But that is not the law.

▮▮▮▮ According to Eleventh Circuit precedent, "[t]he presence or absence of jurisdiction must be evaluated based on the state of affairs existing at the time the adversary complaint was filed ... not at some later time." *In re Toledo,* 170 F.3d at 1346 n. 8 (*citing In re Lemco Gypsum,* 910 F.2d at 788 & n. 20). Other courts agree. As Judge Posner has explained, "when a case is within federal jurisdiction when filed, it remains there even if subsequent events eliminate the original basis for federal jurisdiction." *Chapman v. Currie Motors, Inc.,* 65 F.3d 78, 81 (7th Cir.1995) (*citing St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 293, 58 S.Ct. 586, 82 L.Ed. 845 (1938) *and Pratt*

*Central Park Limited Partnership v. Dames & Moore, Inc.,* 60 F.3d 350, 351 (7th Cir.1995)). For example, a litigant in federal court cannot destroy diversity jurisdiction by simply moving to the same state as an opposing party or adding a nondiverse party. *Id.* (*citing Freeport–McMoRan Inc. v. K N Energy, Inc.,* 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991) (per curiam)). Judge Posner illustrated why this rule makes sense:

> Otherwise a litigant who didn't like the way his case was going could, even on the eve of judgment, engineer its dismissal, allowing him to start over in a different court. Exactly the same danger would be created if the debtor in an adversary proceeding could bounce the proceeding out of federal court by procuring the dismissal of the underlying bankruptcy proceeding....

*Id.* Therefore the question of whether the Court has jurisdiction over this adversary proceeding following dismissal of the underlying bankruptcy is irrelevant; the inquiry must focus on whether the Court had jurisdiction over this adversary proceeding at the time the Complaint was filed.

### This Court's Jurisdiction over GACC's Claims

As discussed above, for this Court to have subject matter jurisdiction, adjudication of GACC's claims must—at a minimum—have conceivably affected the bankruptcy estate at the time GACC filed its Complaint.[14] The Court concludes that it

---

**13.** In their Answer, the Defendants deny that the Court has subject matter jurisdiction over this adversary proceeding, citing *Stern v. Marshall.* Since nothing in *Stern* suggests any limitations on the Court's subject matter jurisdiction beyond what Congress has specified, the Defendants' reliance on that opinion is misplaced.

**14.** Although the distinction between core and non-core claims is an important one for determining whether this Court has authority to enter a final order, the Court need not distinguish between the two categories for purposes of the Defendants' motion to dismiss because the Court has subject matter jurisdiction to hear both types of claims. Nothing in this Order should be construed as characterizing

has subject matter jurisdiction because all the relief GACC seeks would have conceivably affected the bankruptcy estate.

■ The common thread running through all of GACC's claims is the question of whether or not Oxley (and the other Defendants) retain any interest(s) in the Property. Clearly, if Oxley had retained any interest in the Property, that interest would have been property of its bankruptcy estate. In fact, Oxley listed the Property as an asset on its real property schedule (Schedule A), so the Property became part of the bankruptcy estate at filing. Even after GACC allegedly foreclosed on the Property, Oxley and the other Defendants continued to assert a whole, or at least partial, interest in it. Thus, if resolution of any of GACC's claims would impact Oxley's interest in the property, resolving those claims would have conceivably impacted the bankruptcy estate at the time the Complaint was filed, giving this Court subject matter jurisdiction.

■ Resolution of all of GACC's claims would have affected Oxley's—and its estate's—interest in the Property at the time the Complaint was filed. If GACC did not validly foreclose, or if GACC's alleged default under the Loan Agreement precluded foreclosure, or if the foreclosure were governed by New York law (which does not allow for nonjudicial foreclosure), or if this Court did not grant effective stay relief before the foreclosure,[15] or if the pending appeal in the New York courts stayed the foreclosure, the Property would have remained property of the estate. The Title Affidavit asserts these claims to the Prop-

erty on Oxley's behalf; thus determining the validity of the Title Affidavit and its asserted interests would impact Oxley's—and by extension the estate's—claims to the Property. Also, Oxley is a named grantee on the Easement; thus if the Court were to decide that the Easement was not extinguished by the foreclosure or were to conclude that the Easement was valid and should not be cancelled, then Oxley's interest in it would have been property of the estate. A determination that GACC is title owner of the Property free of any interests of any of the Defendants would necessarily deprive Oxley and its estate of any claims to the Property. Similarly, GACC's quiet title action would deprive Oxley's estate of any interest in the Property and is thus related to the underlying bankruptcy case. *See Faiyaz v. Marshall (In re Faiyaz)*, 341 Fed.Appx. 581, 583 n. 3 (11th Cir.2009) (holding that bankruptcy court had jurisdiction to enter a final order on trustee's quiet title action). In sum, adjudication of any and all of GACC's claims would have impacted Oxley's bankruptcy estate at the time the Complaint was filed. Therefore, the Court has subject matter jurisdiction over this adversary proceeding.

■ The Defendants suggest that these issues involve mostly questions of Georgia property law, which is true, but that truism is not determinative of whether this Court has subject matter jurisdiction. Bankruptcy courts can and must refer to state law when determining the property of an estate in a bankruptcy case. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (hold-

---

any of GACC's claims as either core or non-core.

**15.** Additionally, this Court has jurisdiction to rule on the effect of its stay relief order because a bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior

orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009); *see also Miller v. Kemira, Inc. (In re Lemco Gypsum), Inc.*, 910 F.2d 784, 788 (11th Cir.1990) ("We agree that courts should retain jurisdiction to enforce their orders . . . .").

ing that question of whether security interest in property extends to rents and profits derived from the property must be resolved by reference to state law). In fact, Congress has specified that a "determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." 28 U.S.C. § 157(b)(3). Therefore, though this Court will necessarily look to state law when adjudicating this adversary proceeding, this fact alone cannot deprive the Court of jurisdiction.

### Retention of this Adversary Proceeding

As explained above, jurisdiction over an adversary proceeding is determined at the time the Complaint is filed, not some later time such as after the underlying bankruptcy has been dismissed. The Eleventh Circuit has confirmed that "the dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement." *Fidelity & Deposit Co. of Maryland v. Morris (In re Morris)*, 950 F.2d 1531, 1534 (11th Cir.1992). Further, the "decision whether to retain jurisdiction over the adversary proceeding should be left to the sound discretion of the bankruptcy court." *Id.* In other words, a bankruptcy court's decision to retain an adversary proceeding following dismissal of the underlying bankruptcy case is reviewed for abuse of discretion.[16] *Id.* Thus the issue is not whether the Court *can* retain

jurisdiction over this adversary proceeding, but rather whether it *should.*

The Eleventh Circuit has set forth three factors to determine whether jurisdiction should be retained here: "(1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related legal issues involved." *Id.* at 1535. After analyzing these factors, the Court concludes that the first two factors weigh heavily in favor of retaining this adversary proceeding, and the third factor suggests nothing that would favor dismissal.

### Judicial Economy

Judicial economy is best served by the Court retaining this adversary proceeding. At the hearing on dismissal of the underlying bankruptcy case, Debtor's counsel had a chance to object to the Court retaining jurisdiction over this adversary proceeding. He did not. To the contrary, he encouraged the Court to dismiss the underlying bankruptcy with the understanding that the Court would retain jurisdiction over this proceeding. The Court could have chosen to convert the bankruptcy case to chapter 7 and retain jurisdiction over this proceeding, but instead chose to dismiss the case at the urging of the Debtor. Now Debtor and its co-defendants argue that the dismissal, which it encouraged, deprived this Court of the jurisdiction that it agreed the Court would retain. By agreeing that the Court could retain jurisdiction over this adversary proceeding, Debtor caused the Court to expend

---

16. Other circuit courts appear to agree with the Eleventh that bankruptcy courts have discretion to retain adversary proceedings after underlying case dismissal. *See Carraher v. Morgan Electronics (In re Carraher)*, 971 F.2d 327 (9th Cir.1992) (holding that bankruptcy court did not abuse its discretion in retaining jurisdiction over debtors' related fraud claims after dismissing debtors' bankruptcy case);

*Querner v. Querner (Matter of Querner)*, 7 F.3d 1199 (5th Cir.1993) (holding that bankruptcy court abused its discretion in retaining jurisdiction over probate estate); *Porges v. Gruntal & Co., Inc. (In re Porges)*, 44 F.3d 159 (2d Cir.1995) (holding that bankruptcy court properly exercised discretion to retain jurisdiction over adversary proceeding).

considerable judicial resources dealing with it. Several more months passed before Debtor and its co-defendants decided to challenge this Court's jurisdiction.

By delaying, Debtor and its co-defendants have caused the Court to spend considerable time and effort dealing with this adversary proceeding—time and effort which the Court may not have invested if the Defendants had objected to its retention earlier. The Court has had to hear and resolve discovery disputes, including a motion to compel and a show cause motion for sanctions, which have been ruled upon. The Defendants have filed counterclaims, prompting a response and a motion for judgment on the pleadings. The Court has had to review these pleadings, deal with Drury's motion for an extension of time to respond, and then review the hundreds of documents he filed in response.

At this point, retaining this adversary proceeding would be more efficient on the whole than forcing a state or district court [17] to start from scratch. All of the time and effort this Court has expended would be wasted, and redundant effort would be required from any court that would be forced to start all over again from the beginning.

### Fairness and Convenience to the Litigants

Retaining this adversary proceeding is the most fair and convenient result for the parties. Due to the Defendants' participation in this litigation (and in some instances the failure to participate when required) and delay in challenging this Court's retention of jurisdiction, they have created a situation where dismissal at this point would prejudice GACC. The Defendants filed counterclaims, forcing GACC to file an answer and affirmative defenses and prompting it to file a motion for judgment on the pleadings, to which Drury responded with hundreds of pages of documents. The Defendants stipulated to discovery deadlines, and discovery has been active, with depositions scheduled and now completed. Discovery motions have been filed and ruled upon. At this point, discovery is now complete, and this case is ready for dispositive motions or trial and, in fact, a dispositive motion has already been filed on the Debtor's counterclaims. If the Court were to dismiss this proceeding at this point, it would need to be re-filed, another answer filed, duplicate counterclaims filed, another motion for judgment on the pleadings filed, and Defendants would get a do-over on discovery, with presumably more discovery battles fought along the way.

Dismissal at this stage would greatly increase the legal expenses of all parties and cause further unnecessary delays. Forcing GACC to re-file its claims in another court and start all over at this point would be unfair and incredibly inconvenient, particularly where the Debtor voluntarily submitted itself to the jurisdiction of this Court after having a prior case dismissed by another bankruptcy court in a different district. To decline jurisdiction at this point would waste the resources the parties have already invested in this case and would be unfair and inconvenient to them.

### Degree of Difficulty of the Related Legal Issues Involved

The degree of difficulty of the legal issues in this adversary proceeding poses no persuasive rationale for dismissing it. All of GACC's causes of action revolve around a dispute over real property and a contest-

---

**17.** The Court assumes without deciding that a federal district court would have diversity jurisdiction.

ed foreclosure. Although these are primarily state law matters, this Court deals with Georgia property law on a regular basis. In fact, a substantial portion of the matters that this Court considers involve real property and potential or actual foreclosure. Given this experience, this Court is well-qualified to deal with these matters. In addition, several of the issues would be more appropriately resolved in bankruptcy court, particularly the interpretation of this Court's order lifting the automatic stay and the fraudulent transfer claim under 11 U.S.C. § 548. In sum, analysis of these factors compels the conclusion that this Court should retain jurisdiction over this adversary proceeding.

## Conclusion

For the reasons stated above, the Defendants' motion to dismiss this adversary proceeding for lack of subject matter jurisdiction is DENIED.